# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-CA-01924-SCT

*KATHERINE L. BUCHANAN*

*v.*

*AMERISTAR CASINO VICKSBURG, INC.*


| | |
|---|---|
| DATE OF JUDGMENT: | 09/30/2005 |
| TRIAL JUDGE: | HON. FRANK G. VOLLOR |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DAVID M. SESSUMS |
| ATTORNEYS FOR APPELLEE: | TIMOTHY D. MOORE |
| | EDWARD J. CURRIE, JR. |
| | JAMES J. PISANELLI |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 03/15/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |


**BEFORE SMITH, C.J., EASLEY AND GRAVES, JJ.**

**EASLEY, JUSTICE, FOR THE COURT:**

¶1.     The Circuit Court of Warren County, Mississippi determined that Ameristar Casinos, Inc. (Ameristar-Las Vegas) was not the alter ego of Ameristar Casino Vicksburg, Inc. (Ameristar-Vicksburg) and granted summary judgment, dismissing Ameristar-Las Vegas as a defendant.  In addition, the trial court granted Ameristar-Las Vegas's motion to strike the expert report and affidavit of James A. Koerber, Plaintiff Katherine Buchanan's expert, as untimely.  Koerber's affidavit consisted merely of his sworn statement to the effect that the

information contained in his report was true and correct as set forth therein. We find that the trial court did not err by granting Ameristar-Las Vegas's motion for summary judgment and granting Ameristar-Las Vegas's motion to strike the expert report and affidavit as untimely. Accordingly, the judgment of the Circuit Court of Warren County is affirmed.

## PROCEDURAL HISTORY AND FACTS

¶2. On March 8, 1997, Buchanan was employed by Ameristar-Vicksburg. Buchanan claimed that she injured her left knee while working at Ameristar-Vicksburg in the course and scope of her employment. Buchanan went to the emergency room for treatment, and Ameristar-Vicksburg and its workers' compensation carrier, Legion Insurance Company, paid the emergency room expenses. Thereafter, Ameristar-Vicksburg and Legion refused to pay additional medical expenses for costs incurred with other medical visits and surgery.

¶3. On March 26, 1997, Buchanan filed a petition to controvert with the Mississippi Workers' Compensation Commission (Commission). The Administrative Law Judge (ALJ) found that Buchanan had received a work-related injury to her left knee. The ALJ ordered Ameristar-Vicksburg and Legion, collectively "the Defendants," to pay temporary total benefits, penalties, and interest on any unpaid compensation benefits, and to provide medical services and supplies as required by Buchanan in accordance with Mississippi statutes.

¶4. The Defendants appealed the ALJ's ruling to the full Commission. The full Commission affirmed the ALJ's order. Thereafter, the Defendants appealed the full Commission's decision to the Circuit Court of Warren County. The trial court affirmed the Commission's decision. In November 1999, the Defendants filed an appeal from this ruling

2

with this Court. However, the Defendants dismissed their appeal with this Court in December 1999. The Defendants waited almost six months to begin payment as ordered by the trial court.

¶5.    Thereafter, Buchanan filed suit against Ameristar-Vicksburg and Legion, alleging bad faith for its refusal to pay, bad faith for its delay in payment, and improper and inadequate investigation. During the discovery process, Buchanan learned that Ameristar-Vicksburg did not have separate financial statements from its parent company Ameristar-Las Vegas. The trial court granted Buchanan's motion to amend to bring Ameristar-Las Vegas into the lawsuit as a party defendant.[1]

¶6.    Buchanan filed a third amended complaint adding Ameristar-Las Vegas as a party defendant on August 16, 2004, more than four years after the complaint was originally filed in the circuit court.[2] The third amended complaint alleged that Ameristar-Las Vegas was the alter ego of Ameristar-Vicksburg. In the complaint, Buchanan sought two million dollars in actual damages and thirty million dollars in punitive damages. On December 23, 2004, Ameristar-Las Vegas filed a motion for summary judgment denying that it was the alter ego of Ameristar-Vicksburg and requesting that it be dismissed from the lawsuit.

_____

[1] GAB Robbins North America, Inc., also was added as a new party defendant to the third amended complaint.

[2] The third amended complaint listed four defendants: Ameristar Casino Vicksburg, Inc.; Legion Insurance Company; GAB Robbins North America, Inc.; and Ameristar Casino, Inc. Legion was the workers' compensation insurance carrier, and GAB Robbins investigated workers' compensation claims and determined if the claims should be paid or denied. Legion was dismissed later from the lawsuit.

¶7. On February 9, 2005, Buchanan filed a response in opposition to the motion for summary judgment. On the same day, Ameristar-Las Vegas filed a motion to strike the expert report and affidavit contained in Buchanan's response in opposition to the motion for summary judgment. A hearing was conducted on February 10, 2005. The trial court granted the summary judgment and motion to dismiss in favor of Ameristar-Las Vegas. In addition, the trial court granted Ameristar-Las Vegas's motion to strike Buchanan's expert report and his affidavit as being untimely filed. On reconsideration, the trial court affirmed its decision to grant summary judgment and to strike Buchanan's expert report and affidavit and entered its order as a final judgment pursuant to M.R.C.P. 54(b) . Following this ruling, Buchanan filed a notice of appeal with this Court raising the following issues:

I. **Whether the trial court erred by granting Ameristar-Las Vegas's motion to strike.**

II. **Whether the trial court erred by granting Ameristar-Las Vegas's motion for summary judgment**

## ANALYSIS

### I. Motion to strike

¶8. Ameristar-Las Vegas filed a motion to strike Buchanan's expert report and affidavit as being untimely submitted. The trial court agreed with Ameristar-Las Vegas and struck the expert report and affidavit as being untimely submitted pursuant to its discovery deadline order. Accordingly, Buchanan argues on appeal that the trial court erred by striking her expert's affidavit and report as being untimely. Buchanan improperly relies on M.R.C.P. 56 and *In re Last Will and Testament of Smith*, 910 So. 2d 562 (Miss. 2005), which both

4

concern when a party may serve affidavits in the context of summary judgment motions. This issue does not involve whether summary judgment was appropriate, but instead, whether the expert report and affidavit was timely submitted to Ameristar-Las Vegas in discovery, where the trial court had issued a discovery deadline order.

¶9.	In ***Bowie v. Montford Jones Mem'l Hosp.***, this Court held:

> Our trial judges are afforded considerable discretion in managing the pre-trial discovery process in their courts, including the entry of scheduling orders setting out various deadlines to assure orderly pre-trial preparation resulting in timely disposition of the cases. Our trial judges also have a right to expect compliance with their orders, and when parties and/or attorneys fail to adhere to the provisions of these orders, they should be prepared to do so at their own peril. *See, e.g.*, ***Kilpatrick v. Miss. Baptist Med. Ctr.***, 461 So. 2d 765, 767-68 (Miss. 1984) (held that trial court did not abuse discretion in dismissing case due to failure to comply with pre-rules discovery statutes relating to timely designation of expert witnesses); ***Mallet v. Carter***, 803 So. 2d 504, 507-08 (Miss. Ct. App. 2002) (held that trial court did not abuse discretion in dismissing case for failure to timely designate expert witness within the time allowed by the trial court's scheduling order).

***Bowie v. Montfort Jones Mem'l Hosp.***, 861 So. 2d 1037, 1042 (Miss. 2003). However, this Court also considers the time line for discovery submissions and each alleged discovery violation on a case-by-case basis. In ***Bowie***, this Court further held:

> Discovery responses are to be supplemented seasonably pursuant to Rule 26(f) of the Mississippi Rules of Civil Procedure. It has been held that "seasonably does not mean several months later. It means immediately." ***West v. Sanders Clinic for Women, P.A.***, 661 So. 2d 714, 721 (Miss. 1995). Additionally, "seasonableness must be determined on a case by case basis looking at the totality of the circumstances surrounding the supplemental information the offering party seeks to admit." ***Blanton v. Board of Supervisors***, 720 So. 2d 190, 195 (Miss. 1998).

***Bowie***, 861 So. 2d at 1041.

5

¶10.   Here, Buchanan filed a motion for leave to amend her complaint to add Ameristar-Las Vegas as a party defendant under an alter ego theory.  Initially, the trial court denied Buchanan's motion for leave to amend the complaint.  However,  in July 2004, the trial court conducted a hearing on the plaintiff's motion for reconsideration of the motion for leave to amend her complaint.  On August 3, 2004, the trial court granted Buchanan leave to amend the complaint.  Importantly, this order also re-opened discovery and provided that Buchanan had *sixty days* from the date of Ameristar-Las Vegas's answer to conduct discovery to support her position, and thereafter, Ameristar-Las Vegas had thirty days, if warranted, to submit a motion to dismiss.

¶11.   According to the certificate, on October 19, 2004, Ameristar-Las Vegas, the newly added defendant, served a request for production of documents on Buchanan.  In the request for production of documents, Ameristar-Las Vegas sought the production of any report received from an expert and all documents used by the expert to form his or her opinion instead of filing an interrogatory request for expert information pursuant to M.R.C.P. 26(b)(4)(A)(I).[3]

---

[3]  M.R.C.P. 26 provides in part:

**(b) Scope of Discovery**.  Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:

**(1) In General.** Parties may obtain discovery regarding *any matter, not privileged, which is relevant to the issues raised by the claims or defenses of any party.* The discovery may include the existence, description, nature, custody, condition and location of any books, documents, electronic or magnetic data,

6

¶12.   Buchanan produced no documents in response to the eight requests for production of documents.  On November 9, 2004, she responded to Ameristar-Las Vegas's eight requests for production of documents.  The relevant portion of the response provided:

> Plaintiff further objects on the basis that if Ameristar-Casino, Inc.[,] [Las-Vegas] is not the alter ego of Ameristar Casino Vicksburg, Inc.[,] then there is not (sic) need for the requested information and that if Ameristar Casino, Inc.[,] [Las Vegas] is in fact the alter ego of Ameristar Casino Vicksburg, Inc.[,] this information has already been provided to Ameristar Casino, Inc [Las Vegas].

---

> or other tangible things; and the identity and location of persons (I) having knowledge of any discoverable matter or (ii) who may be called as witnesses at the trial. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.
>
> **(4) Trial Preparations: Experts.** Discovery of facts known and opinions held by experts, otherwise discoverable under subsection (b)(1) of this rule and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:
>
> > *(A) (I)* A party may through interrogatories require any other party to ***identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion***.

(Emphasis added).

7

While Buchanan's response stated that she objected to the requested information, her objection was not appropriate as it stated no grounds or basis for the objection. The response amounted to a waiver of any alleged objection.

¶13. After Ameristar-Las Vegas received Buchanan's response, it filed a motion for summary judgment. Ameristar-Las Vegas then received the expert report and affidavit the day before the hearing on the motion for summary judgment, when Buchanan filed a motion in opposition to Ameristar-Las Vegas's motion for summary judgment and attached the two documents. Ameristar-Las Vegas immediately filed a motion to strike Buchanan's expert report and affidavit as being untimely, rather than a motion to compel discovery. The language of M.R.C.P. 37 does not mandate that a party must file a motion to compel unanswered or incomplete discovery.[4]

---

[4] M.R.C.P. 37(a)(1) and (3) provides:

> **(a) Motion for Order Compelling Discovery.** A party, upon reasonable notice to other parties and all persons affected thereby, *may apply* **for an order compelling discovery** as follows:
>
> > **(1) Appropriate Court**. An application for an order *may be made* to the court in which the action is pending.
>
> > **(3) Evasive or Incomplete Answer.** For purposes of this section, an evasive or incomplete answer is to be treated as a failure to answer.

(Emphasis added).

8

¶14. At trial and on appeal, Buchanan's position was that the expert report was timely submitted to Ameristar-Las Vegas pursuant to M.R.C.P. 56. Buchanan did not argue that M.R.C.P. 26 does not specifically require that the expert's information listed under M.R.C.P. 26(b)(4)(A)(I) be provided in the form of a report.

¶15. Importantly, Buchanan raised no objection to producing the expert report from Koerber at the hearing on the motion to strike or the motion for summary judgment, which both were held on February 10, 2005. Instead, the day before the hearing, Buchanan filed a motion in opposition to the motion for summary judgment, including an affidavit and expert report from Koerber. The report stated that in Koerber's expert opinion, Ameristar-Las Vegas and Ameristar-Vicksburg operated as one corporation.

¶16. At the September 9, 2005, hearing on the motion to reconsider, the trial court affirmed its decision to strike the expert report and affidavit as being untimely provided pursuant to the trial court's discovery deadline order. In addition, the trial court made clear that the basis for granting Ameristar-Las Vegas's motion to strike was the discovery deadline violation and not to the requirements of M.R.C.P. 56. Therefore, as to the expert report and affidavit, the trial court was concerned with violation of discovery deadlines, not whether the lack of the expert report merited summary judgment in favor of Ameristar-Las Vegas. The issue regarding summary judgment in favor of Ameristar-Las Vegas is discussed below in Issue II.

¶17. The trial court has the authority to set discovery scheduling orders with deadlines and to enforce its deadlines. *Bowie*, 861 So. 2d at 1062. Furthermore, the trial courts are within reason to expect compliance by the parties and adherence to trial court orders. *Id*. Here,

Buchanan did not timely file Buchanan's expert report from Koerber within the sixty-day discovery deadline order.

¶18.    In ***Miss. Ins. Guar. Ass'n v. Miss. Cas. Ins. Co.***, 2006 Miss. LEXIS 622, 29 (Miss. 2006), this Court recently reemphasized that when a party acts to disregard the trial court's discovery order he or she so acts at his or her own peril.  In ***Miss. Ins. Guar. Ass'n***, 2006 Miss. LEXIS at 29, the Court affirmed the trial court's decision to strike the discovery.  We stated:

> "Our trial judges . . . have a right to expect compliance with their orders, and when parties and/or attorneys fail to adhere to the provisions of these orders, they do so at their own peril."  ***Bowie***, 861 So. 2d at 1042.  MIGA disobeyed the chancellor.  MIGA gave redundant answers and more information than the chancellor said would be allowed.  Therefore, MIGA acted at its own peril, and the chancellor did not abuse his discretion in striking the record.

***Miss. Ins. Guar. Ass'n***, 2006 Miss. LEXIS at 29.

¶19.    We find that the trial court did not abuse its discretion by granting Ameristar-Las Vegas's motion to strike the expert report and affidavit.  This issue is without merit.

## II.    Summary judgment

¶20.    This Court applies a de novo standard of review on appeal from a grant of summary judgment by the trial court.  *See **Hardy v. Brock***, 826 So. 2d 71, 74 (Miss. 2001).  *See also **Jenkins v. Ohio Cas. Ins. Co.***, 794 So. 2d 228, 232 (Miss. 2001); ***Russell v. Orr***, 700 So. 2d 619, 622 (Miss. 1997); ***Richmond v. Benchmark Constr. Corp.***, 692 So. 2d 60, 61 (Miss. 1997); ***Northern Elec. Co. v. Phillips***, 660 So. 2d 1278, 1281 (Miss. 1995).

¶21.   Rule 56(c) of the Mississippi Rules of Civil Procedure provides that summary judgment shall be granted by a court if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." M.R.C.P. 56 (c); *see Saucier*, 708 So. 2d at 1354. The moving party has the burden of demonstrating there is no genuine issue of material fact, while the non-moving party should be given the benefit of every reasonable doubt. *Tucker v. Hinds County*, 558 So. 2d 869, 872 (Miss. 1990); *see also Heigle v. Heigle*, 771 So. 2d 341, 345 (Miss. 2000). A fact is material if it "tends to resolve any of the issues properly raised by the parties." *Palmer v. Anderson Infirmary Benevolent Ass'n*, 656 So. 2d 790, 794 (Miss. 1995).

¶22.   "If, in this view, there is no genuine issue of material fact and, the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise, the motion should be denied." *Williamson ex rel. Williamson v. Keith*, 786 So. 2d 390, 393 (Miss. 2001). "Issues of fact sufficient to require denial of a motion for summary judgment obviously are present where one party swears to one version of the matter in issue and another says the opposite." *Tucker*, 558 So. 2d at 872. In *Simmons v. Thompson Mach. of Miss., Inc.*, 631 So. 2d 798, 801 (Miss. 1994) (citing *Shaw v. Burchfield*, 481 So. 2d 247, 252 (Miss. 1985)) this Court held:

> Of importance here is the language of the rule authorizing summary judgment 'where there is no genuine issue of *material* fact.' The presence of fact issues in the record does not per se entitle a party to avoid summary judgment. The court must be convinced that the factual issue is a material one, one that matters in an outcome determinative sense . . . the existence of a hundred

11

contested issues of fact will not thwart summary judgment where there is no genuine dispute regarding the material issues of fact.

The evidence must be viewed in the light most favorable to the non-moving party. *See Russell*, 700 So. 2d at 622; *Richmond*, 692 So. 2d at 61; *Northern Elec. Co.*, 660 So. 2d at 1281; *Simmons,* 631 So. 2d at 802; *Tucker*, 558 So. 2d at 872.

¶23.    Ameristar-Las Vegas filed a motion for summary judgment claiming that it was not the alter ego of Ameristar-Vicksburg.  The trial court granted summary judgment in favor of Ameristar-Las Vegas.  The trial court relied on *Castillo v. M.E.K. Const., Inc*.,741 So. 2d 332, 340 (Miss. Ct. App. 1999).  *Castillo* addressed the issues of piercing the corporate veil and workers' compensation law.  In *Castillo*, Castillo claimed that certain evidence demonstrated that one subsidiary was the alter ego of another subsidiary. *Id*. at 342.  The Court of Appeals held that Castillo failed to present "facts sufficient to justify piercing" the corporate veil under Mississippi law. *Id*.

¶24.    Here, the trial court, relying on *Castillo,* ruled as follows:

> I'm ready to rule.  I'm going to rule - - I'm going to grant the summary judgment.  I'm going specifically on the point that there appears to be no sham or fraud shown or and intent to subvert justice, as mentioned in the *Castillo* case.  I don't think - - I don't think I need to address all the issues.  To me, that's the main basis of my ruling.  Also the - - in that regard, as far as no fraud or sham, there appears to be assets available to satisfy the judgment.  It doesn't seem to be - - any of this was directed at shielding assets from creditors.  They have a balance net worth of 90 - - what, 98 million, which would be sufficient to satisfy a judgment.

The trial court denied Buchanan's motion for rehearing on this issue.

¶25. Both Buchanan and Ameristar-Las Vegas cite to factors used by Mississippi federal district courts, applying Mississippi law, for alter ego theories. In *Gammill v. Lincoln Life & Annuity Distribs.*, 200 F. Supp. 2d 632, 634-35 (S.D. Miss. 2001), the court, applying Mississippi law, considered ten factors to "pierce the corporate veil." The factors considered were as follows:

> [T]he factors relevant to the determination of whether plaintiff has made sufficiently particularized allegations demonstrating the applicability of the piercing doctrine to the facts of the case: (1), the parent corporation owns all or a majority of the capital stock of the subsidiary; (2), the parent and subsidiary corporations have common directors or officers; (3), the parent corporation finances the subsidiary; (4), the parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation; (5), the subsidiary has grossly inadequate capital; (6), the parent corporation pays the salaries or expenses or losses of the subsidiary; (7), the subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation; (8), in the papers of the parent corporation and in the statements of its officers, "the subsidiary" is referred to as such or as a department or division; (9), the directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take direction from the parent corporation; and (10), the formal legal requirements of the subsidiary as a separate and independent corporation are not observed. *Id*; and *see Century Hotels v. United States*, 952 F. 2d 107, 110 (5th Cir. 1992); and *United States v. Jon-T Chemicals, Inc.*, 768 F. 2d 686, 691-92 (5th Cir. 1985), cert. denied, 475 U.S. 1014, 106 S. Ct. 1194, 89 L. Ed. 2d 309 (1986).

*Gammill*, 200 F. Supp. 2d at 634-35 (citing *North American Plastics v. Inland Shoe Manufacturing Company*, 592 F. Supp. 875, 877 (N.D. Miss. 1984)).

¶26. While these ten factors are instructive on the alter ego theory, this Court has not adopted the factors as applied by the federal courts. Likewise, in *Castillo*, the Court of Appeals merely set forth the federal factors since Castillo used them as the basis of her argument. However, this Court has held a three-factor test for piercing the corporate veil and

13

imposing liability on corporate shareholders.  These factors are set forth in *Gray v. Edgewater Landing, Inc*., as follows:

> (a) some frustration of contractual expectations regarding the party to whom he looked for performance; (b) the flagrant disregard of corporate formalities by the defendant corporation and its principals; (c) a demonstration of fraud or other equivalent misfeasance on the part of the corporate shareholder.

*Gray v. Edgewater Landing, Inc.*, 541 So. 2d 1044, 1047 (Miss. 1989); *see also Hardy v. Brock*, 826 So. 2d 71, 75 (Miss. 2002); *Castillo*,741 So. 2d at 340; *Richardson v. Jenkins Builders, Inc.*, 737 So. 2d 1030, 1031 (Miss. Ct. App. 1999); *Berhow v. Peoples Bank*, 423 F. Supp.2d 562, 566 (S.D. Miss. 2006) (applying the *Gray* three-part test for piercing the corporate veil).  In *Gray*, this Court further held that "[t]o present a jury issue on a demand that the corporate veil be pierced, a party must present some credible evidence of each of these points."  *Gray*, 541 So. 2d at 1047.

¶27.   Mississippi case law generally favors maintaining corporate entities and avoiding attempts to pierce the corporate veil. *Gray*, 541 So. 2d at 1046.  "[T]he cardinal rule of corporate law is that a corporation possesses a legal existence separate and apart from that of its officers and shareholders." *Id*. at 1047 (quoting *Amason v. Whitehead*, 186 Ga.App. 320, 367, S.E.2d 107, 108 (1988)); *see also North American Plastics, Inc. v. Inland Shoe Manufacturing Co., Inc.*, 592 F. Supp. 875, 877 (N.D. Miss. 1984).  This rule applies "whether such shareholders are individuals or corporations." *North American Plastics*, 592 F. Supp. at 877.  In *Johnson & Higgins of Miss., Inc. v. Comm'r of Ins.*, 321 So. 2d 281, 284-85 (Miss. 1975), this Court held that "the concept of the corporation is that the distinct

14

corporate entities will be maintained *unless* to do so would subvert the ends of justice." (Emphasis added).

¶28.   In ***Murdock Acceptance Corporation v. Adcox***, 245 Miss. 151, 163, 138 So. 2d 890, 896 (Miss. 1962), this Court has held that "[o]rdinarily two or more corporations are separate and distinct entities although the same individuals are the incorporators of, or own stock, in the several corporations, and although such corporations may have the same persons as officers." *See also **Johnson & Higgins***, 321 So. 2d at 285.   A corporation also retains a separate identify for corporation purposes when stock is owned wholly or in part by another corporation or natural person. *Id*. at 164; *see also **Johnson & Higgins***, 321 So. 2d at 284-85. Further, "[o]wnership of all the stock of a corporation coupled with common management and direction does not, however, operate as a merger of the two corporations into a single entity." ***Johnson & Higgins***, 321 So. 2d at 285.   This Court will not disregard corporate identity *unless* it is shown that one corporation is a "mere instrumentality or agency or adjunct in that sense, or as a sham or is used in fraud, by the dominant corporation." *Id*.

¶29.   Piercing the corporate veil of a subsidiary to reach the parent corporation is not "lightly undertaken" by Mississippi courts. ***Johnson & Higgins***, 321 So. 2d at 285.   "Courts do not take piercing of the corporate veil lightly because of the chilling effect it has on corporate risk-taking." ***Nash Plumbing, Inc. v. Shasco Wholesale Supply, Inc.***, 875 So. 2d 1077, 1082 (Miss. 2004) (citing ***Highway Dev. Co. v. Miss. State Highway Comm'n***, 343 So. 2d 477, 480 (Miss. 1977)).

¶30.   In ***Johnson & Higgins***, this Court held:

15

> The mere fact that one owns all the stock of the other, or substantially all, is not enough to warrant disregard, in the absence of some fraudulent purpose; nor is the fact that there was an opportunity to exercise control. Furthermore the fact that the shareholders of the two corporations are the same is not of itself sufficient to treat the two corporations as one. Fletcher [(1 W. Fletcher, Cyclopedia of the Law of Private Corporations § 43 at 210 (Perm.Ed. 1974))].

*Id*.; *see also* **Berhow**, 423 F. Supp.2d at 566.

¶31. Buchanan argues that Ameristar-Las Vegas is the alter ego of Ameristar-Vicksburg. To support her position, Buchanan relies upon the alter ego factors used by the federal courts. At the time of the summary judgment motion, Buchanan argued that Ameristar-Las Vegas was the parent company and owned all of the capital stock of its subsidiary, Ameristar-Vicksburg. Ameristar - Las Vegas did not deny this relationship between the two companies. In his affidavit, Peter Walsh (Walsh), the senior vice-president, general counsel, and assistant secretary of Ameristar-Las Vegas, admitted that Ameristar-Las Vegas was the parent company of six subsidiaries, one of them being Ameristar-Vicksburg.

¶32. According to the documents submitted in Buchanan's response in opposition to the motion for summary judgment, Ameristar-Las Vegas and Ameristar-Vicksburg shared some common directors and officers. However, Ameristar-Las Vegas was incorporated in Nevada and had at least six directors and seven officers. In contrast, Ameristar-Vicksburg was incorporated in Mississippi, and had only one director and five officers. Craig H. Neilsen was the president and one of six directors of Ameristar-Las Vegas and the president and sole director of Ameristar-Vicksburg. In addition, Thomas M. Steinbauer was the senior vice-president of finance, chief financial officer, treasurer, and secretary for Ameristar-Las Vegas.

16

Steinbauer was a vice-president of finance, treasurer and secretary of Ameristar-Vicksburg. Other than Neilsen and Steinbauer's positions, no other officer or director was the same for the two corporations. Ameristar-Las Vegas did not deny that the two corporations had common directors or officers.

¶33. As this Court has held, corporations are considered to be separate and distinct entities even if "the same individuals are the incorporators of, or own stock, in the several corporations, and although such corporations may have the same persons as officers." *Murdock Acceptance*, 138 So. 2d at 896; *Johnson & Higgins*, 321 So. 2d at 285. Therefore, we find that the corporate veil should not be pierced merely because there was a commonality of ownership and directors or officers of Ameristar-Las Vegas and Ameristar-Vicksburg.

¶34. Buchanan also claims that the parent corporation, Ameristar-Las Vegas, financed its subsidiary, Ameristar-Vicksburg. To support this assertion, Buchanan argues that all the income generated by Ameristar-Vicksburg in excess of its operating costs was transferred to Ameristar-Las Vegas. Buchanan argues that all of Ameristar-Vicksburg's assets were pledged as security for loans of Ameristar-Las Vegas. Indeed, Ameristar-Las Vegas admitted that there are loan agreements, however, these transactions were documented in the two corporation's financial statements.

¶35. Buchanan claims that Ameristar-LasVegas caused the incorporation of Ameristar-Vicksburg. Buchanan claims that both corporations have identical incorporators. While Ameristar-Las Vegas did not deny that it was the parent company of its wholly-owned

17

subsidiary, Ameristar-Vicksburg, the record revealed only that Thomas B. Shepherd, III, was the incorporator for Ameristar-Vicksburg.

¶36. Buchanan claims that Ameristar-Vicksburg was undercapitalized because (1) it sent all income in excess of its operating costs to Ameristar-LasVegas; and (2) all of Ameristar-Vicksburg's assets were pledged as security for loans of Ameristar-LasVegas. However, the financial statements of Ameristar-Vicksburg showed that the corporation had more than enough capital. Further, Walsh stated in his affidavit that Ameristar-Vicksburg was a "well capitalized corporation." At the time Walsh signed the affidavit in December 2004, he stated that Ameristar-Vicksburg had generated more than sixty-eight million dollars over the past seven years and more than one-hundred million dollars in the two-year period prior to signing the affidavit. Ameristar-Vicksburg paid its employees from paychecks drafted on the Vicksburg property and drawn from AmSouth Bank in Mississippi.

¶37. Buchanan also argues that Ameristar-Vicksburg was organized only as an eating place, whereas, Ameristar-Las Vegas was organized to operate casinos; and that Ameristar-Vicksburg was set up to fund Ameristar-Las Vegas and guarantee its loans. Ameristar-Vicksburg was set up to be a gaming operation. Further, Ameristar-Las Vegas engaged in loan agreements with all of its subsidiaries. All of the six subsidiaries were guarantors of Ameristar-Las Vegas's corporate "Credit Agreement." However, all transactions between the two corporations were documented on each corporation's books and reflected in Ameristar-Vicksburg's 2004 balance sheet.

18

¶38. Buchanan asserts that the two corporations had common business departments, as evidenced by daily, weekly, and monthly reporting from Ameristar-Vicksburg to Ameristar-Las Vegas. Ameristar-Las Vegas admitted that these reports were sent from Ameristar-Vicksburg to Ameristar-Las Vegas. In addition, senior employees of Ameristar-Vicksburg communicated with Ameristar-Las Vegas employees about these reports.

¶39. Buchanan asserts that the two companies did not observe basic corporate formalities. To the contrary, Walsh stated that the two companies had separate bank accounts, accounting records, and corporate books and records. Ameristar-Las Vegas had a bank account in Las Vegas and Ameristar-Vicksburg had a bank account in Mississippi. In addition to maintaining separate corporate documents and records, the two corporations also had separate board meetings, minutes, corporate books, accounting records and payrolls. Additionally, the two companies had separate articles of incorporation and bylaws. Ameristar-Las Vegas was incorporated in Nevada, whereas Ameristar-Vicksburg was incorporated in Mississippi.

¶40. In addition, Buchanan takes issue with the fact that the companies filed a consolidated financial statement and report to the Security and Exchange Commission (SEC). Ameristar-Las Vegas did not deny this assertion. In fact, Walsh stated that Ameristar-Las Vegas was a publically-traded company listed on the NASDAQ. Amerstar-Las Vegas was the parent corporation of six wholly-owned subsidiaries including Ameristar-Vicksburg. As a publically traded company, Ameristar-Las Vegas had to report all earnings to the SEC on a consolidated basis and filed its tax returns on a consolidated basis with the Internal Revenue Service (IRS).

19

Ameristar-Vicksburg provided Ameristar-Las Vegas with a separate financial statement of its own in order to report earnings on a consolidated basis.

¶41. Furthermore, Ameristar-Vicksburg, as the only entity with a Mississippi gaming license, was required to report separate financial information to the Mississippi Gaming Commission and to adhere to Mississippi Gaming Regulations. Both companies had an independent accounting firm audit the annual financial statements for Ameristar-Las Vegas and its six subsidiaries, including Ameristar-Vicksburg.

¶42. While there is a significant connection between Ameristar-Las Vegas and Ameristar-Vicksburg, Buchanan failed to demonstrate that Ameristar-Las Vegas was the alter ego of Ameristar-Vicksburg. Buchanan did not show any frustration of contractual expectations regarding the party to whom she looked for performance. Buchanan had no contractual expectation regarding Ameristar-Las Vegas. In addition, Buchanan failed to show any flagrant disregard of corporate formalities by the Ameristar-Vicksburg and its principal, Ameristar-Las Vegas. Further, Ameristar-Vicksburg demonstrated that it had more than enough capital to cover a judgment in the event that Buchanan should prevail at trial. Ameristar-Las Vegas and Ameristar-Vicksburg maintained all corporate formalities. Finally, Buchanan failed to demonstrate any fraud or other equivalent misfeasance on the part of the corporate shareholders.

¶43. Accordingly, we find that the trial court did not err by finding that Ameristar-Las Vegas was not the alter ego of Ameristar-Vicksburg and granting summary judgment in favor of Ameristar-Las Vegas. This issue is without merit.

20

## CONCLUSION

¶44.    For the foregoing reasons the judgment of the Circuit Court of Warren County is affirmed.

¶45.    **AFFIRMED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR.  DIAZ AND GRAVES, JJ., CONCUR IN RESULT ONLY.**