KITCHENS, Justice,
for the Court:
¶ 1. Peggy Thornton filed this wrongful death action on August 14, 2007, against Woodall Electric Company, Inc. (her deceased husband’s employer), as well as several fictitious defendants.[1] Thornton later added Defendants Tanfield Group, PLC, Tanfield Engineering Systems, Inc. (“Tanfield Engineering”), and Bidgood Enterprises, Inc.[2] in her First Amended Complaint, filed on July 16, 2009, which included additional claims of defective design against the newly added defendants.
¶ 2. After having served Tanfield Group, Thornton had an alias summons issued for Tanfield Engineering on October 18, 2010, and served Tanfield Engineering via certified mail on October 22, 2010. Tanfield Engineering filed a Motion to Dismiss the First Amended Complaint based on the plaintiffs failure to serve process, pursuant to Mississippi Rule of Civil Procedure 12(b)(4)-(5). Thornton’s response to the motion contended that Tanfield Group was the parent company of Tanfield Engineering; thus, according to Thornton, Tanfield Engineering had been put on notice of Thornton’s claims because its parent company had been served in a timely manner. The trial court denied Tanfield Engineering’s Motion to Dismiss based on a finding that Tanfield Engineering was an alter ego of Tanfield Group and that service upon Tanfield Group constituted effective service upon Tanfield Engineering.
¶ 3. Tanfield Engineering filed a Petition for Interlocutory Appeal and a motion to stay proceedings in the trial court, both of which this Court granted.

FACTS AND PROCEDURAL HISTORY

¶ 4. On or about July 27, 2007, Gregory Thornton, while working at Woodall Electric Company, fell from an Upright scissor *696 lift that unexpectedly had toppled over, resulting in his death. Peggy Thornton, Gregory’s widow, filed a wrongful death action on August 14, 2007, against Woodall Electric Company, Inc. (the decedent’s employer),[3] as well as other unknown defendants. Peggy Thornton filed a First Amended Complaint on July 16, 2009, alleging that the Upright scissor lift was defectively designed and naming Tanfield Group, PLC, Tanfield Engineering Systems, Inc. (“Tanfield Engineering”), and Bidgood Enterprises, Inc., doing business as Taylor Rental Center of Meridian[4] as the substituted defendants, replacing three of the unknown defendants in the original complaint. Thornton also moved the court for additional time in which to serve process on Tanfield Group, PLC, pursuant to the guidelines of The Hague Convention, because Tanfield Group, PLC’s principal place of business was in England. The trial court granted Thornton an indefinite extension. Tanfield Group, PLC, filed its Answer and Defenses on September 18, 2009.
¶ 5. An alias summons for Tanfield Engineering was issued on October 18, 2010, and Tanfield Engineering was served via certified mail on October 22, 2010. Tan-field Engineering filed a Motion to Dismiss, pursuant to Mississippi Rules of Civil Procedure 12(b)(4)-(5), based on a failure to serve process within 120 days. Thornton’s response in opposition to the motion contended that Tanfield Group, PLC, a corporation located in the United Kingdom, and Tanfield Engineering were the manufacturers of the Upright aerial lift that fatally injured Gregory Thornton. According to Thornton’s widow, Tanfield Group was the parent company of Tanfield Engineering, a U.S. subsidiary; thus, Tan-field Engineering[5] had been put on notice of Thornton’s claims because its parent company had been served process. Alternatively, Thornton asked that Tanfield Engineering’s motion be held in abeyance until more discovery could be had to determine whether Tanfield Engineering was “merely the alter-ego of its foreign parent.”
¶6. Tanfield Engineering responded to Thornton’s opposition, emphasizing that it was not served process until 452 days after Thornton had filed the Amended Complaint. Moreover, Tanfield Engineering argued that the trial court was required to dismiss Thornton’s complaint because it had not been served within 120 days pursuant to Mississippi Rule of Civil Procedure 4(h) and because Thornton had failed to show good cause why service of process could not have been made within 120 days. Moreover, Tanfield Engineering argued that, while it was a wholly owned, U.S. subsidiary of its British parent company, the two entities were separate and distinct. Thus, according to Tanfield Engineering, service of process on its parent company would have had no legal effect on Tanfield Engineering.
¶ 7. Subsequently, the trial court sua sponte issued a request for interrogatories to Tanfield Group, PLC, which included the following questions:[6]
*697 (1) How much stock is owned by the parent, Tanfield Group, PLC, of the subsidiary, Tanfield Engineering Systems, Inc.?
(2) Do the two corporations ... have separate headquarters?
(3) Do the two corporations have common officers and directors?
(4) Do the two corporations observe corporate formalities?
(5) Do the two corporations maintain separate accounting systems?
(6) Does the parent ... exercise complete authority over the general policy [of the subsidiary] [?]
(7) Does the subsidiary exercise complete authority over daily operations [?]
According to Tanfield Group’s response, Tanfield Group owns 100 percent of the stock of Tanfield Engineering. The two entities share the same secretary, finance director, and chief executive officer. Both entities observe corporate formalities and maintain separate accounting systems. Tanfield Group maintained that, while the parent company offers guidance to the subsidiary, “the general policies of Tan-field Engineering Systems, Inc., are derived from the managers of the business.” Moreover, Tanfield Group averred that the common officers between the two entities had not been involved in “the direction of Tanfield Engineering Systems, Inc.,” in “over a year.”
¶ 8. The trial court denied Tanfield Engineering’s Motion to Dismiss, finding that Tanfield Engineering was an alter ego of Tanfield Group and that service upon Tan-field Group was effective service upon Tan-field Engineering. The trial court’s Memorandum Opinion and Order stated: “In evaluating the information provided in reference to the factors to consider, this [c]ourt weighs very heavy [sic] in its decision that Tanfield Group, PLC owns all of the stock of the subsidiary and the top financial officer and chief operating office of the two are the same for both corporations.” Ultimately, the court found that Tanfield Engineering is an alter ego of Tanfield Group, and, as such, service upon Tanfield Group was effective service of process upon Tanfield Engineering.
¶ 9. Aggrieved by this ruling, Tanfield Engineering filed a Petition for Interlocutory Appeal with this Court and moved to stay the trial court proceedings. This Court entered an order granting the interlocutory appeal and stay on August 4, 2011.

DISCUSSION

Whether the trial court erred in its reliance on federal precedent in determining that Tanfield Engineering is an alter ego of its parent company, Tanfield Group, PLC, and thus, service of process as to the parent company was effective service as to Tanfield Engineering.[7]
¶ 10. Tanfield Engineering appeals the trial court’s order denying its motion to dismiss. This Court reviews a trial court’s decision to grant or deny a *698 motion to dismiss de novo. Stutts v. Miller, 37 So.3d 1, 3 (Miss.2010) (citing Scaggs v. GPCH-GP, Inc., 931 So.2d 1274, 1275 (Miss.2006)).
¶ 11. Tanfield argues that the trial court erred in its reliance on federal precedent in ruling that Tanfield Engineering was an alter ego[8] of Tanfield Group (hereinafter “the parent company”) and that the trial court erred in concluding that service of process on the parent company was sufficient service of process for Tanfield Engineering. Tanfield Engineering maintains that the trial court failed to apply the standard for piercing the corporate veil,[9] as set forth in Buchanan v. Ameristar Casino Vicksburg, Inc., 957 So.2d 969 (Miss.2007). Because the trial court applied a federal standard, not the controlling state precedent, Tanfield Engineering maintains that the trial court erred in finding that Thornton’s having served the parent company with process was sufficient service upon Tanfield Engineering.
¶ 12. Conversely, Thornton argues that the doctrine of piercing the corporate veil, as pronounced in Buchanan, is inapplicable to the instant case because liability is not at issue in this appeal. Moreover, Thornton argues that, because she has a direct cause of action against Tanfield Engineering, piercing the parent company’s corporate veil to get to Tanfield Engineering is unnecessary. Thornton contends that the alter ego factors, found in Hargrave v. Fibreboard Corp., 710 F.2d 1154, 1159-60 (5th Cir.1983), were appropriately applied by the trial court in its determination that Tanfield Engineering is an alter ego of its parent for purpose of service of process.[10]
¶ 13. It is clear from the trial court’s ruling that the court relied heavily on the fact that the parent wholly owns Tanfield Engineering and the fact that the two entities have two officers in common in rendering its decision that Tanfield Engineering is an alter ego of its parent corporation and that service of process on one entity is effective as to the other. Notably, in Hargrave, the Fifth Circuit Court of Appeals gleaned its factor analysis from the Texas “alter ego liability rule,” as the federal appellate court was applying Texas law in that particular case. See id. at 1162. Clearly, Texas common law does not provide binding precedent in this Mississippi case, and liability is not at issue in *699 the instant interlocutory appeal. Moreover, “this Court has not adopted the [alter ego] factors as applied by the federal courts.” Buchanan, 957 So.2d at 977.[11]
¶ 14. As argued by Thornton, this interlocutory appeal is distinguishable from Buchanan in that the issue of whether the parent corporation should be held liable for the acts of Tanfield Engineering, or vice versa, is not before the Court. Rather, Tanfield Engineering is arguing that it was not served within the requisite 120 days and should have been dismissed from the suit because service of process on its parent did not constitute proper service of process upon it, as the parent corporation is not its alter ego.
¶ 15. While the trial court erred in relying on the Fifth Circuit’s Hargrave factors, the court did not misstate the general rule for parent and subsidiary corporations and service of process: “courts have consistently recognized that a subsidiary may be found to be a parent corporation’s agent at law for service of process, or that a parent may be held a subsidiary’s agent at law for service of process where the evidence shows that one is the agent or alter ego of the other.” Delta Constructors, Inc, v. Roediger Vacuum, 259 F.R.D. 245, 249 (S.D.Miss.2009).[12]
[T]he parent-subsidiary relation alone ordinarily does not establish the necessary agency for making service on one through the other if the two maintain separate identities.... [T]o sustain service on the parent through the subsidiary, or vice versa, a showing that the subsidiary corporation is acting as an agent for the parent corporation’s separate business within the state or that the two corporations are not really separate entities has been required.
4A Wright & Miller, Federal Practice and Procedure § 1104 (3d ed.2002).
¶ 16. While the Court in Buchanan was not addressing the issue of service of process, the following analysis is applicable to the instant case in determining whether the parent corporation is an alter ego of Tanfield Engineering:
[T]his Court has held that “[ojrdinarily two or more corporations are separate and distinct entities although the same individuals are the incorporators of, or own stock, in the several corporations, and although such corporations may have the same persons as officers.”
Buchanan, 957 So.2d at 978 (quoting Murdock Acceptance Corp. v. Adcox, 245 Miss. 151, 163, 138 So.2d 890, 896 (Miss.1962)). “A corporation ... retains a separate identity for corporation purposes when stock is owned wholly or in part by another corporation or natural person.” Buchanan, 957 So.2d at 978[13] (citing Murdock Acceptance, 245 Miss, at 164, 138 So.2d at 890). Even if the parent owns all of the subsidiary’s stock and the two entities share common management, this does not “oper-
*700 ate as a merger of the two corporations into a single entity.” Buchanan, 957 So.2d at 978 (quoting Johnson & Higgins of Miss., Inc. v. Comm’r of Ins., 321 So.2d 281, 285 (Miss.1975)). Corporate identity is not disregarded “unless it is shown that one corporation is a mere instrumentality or agency or adjunct in that sense, or as a sham or is used in fraud, by the dominant corporation.” Buchanan, 957 So.2d at 978 (quoting Johnson & Higgins, 321 So.2d at 285)).
¶ 17. The responses provided by Tanfield Group indicated that the parent company owns 100 percent of the subsidiary’s stock. The parent is headquartered in the United Kingdom, while the subsidiary is headquartered in Fresno, California. The two entities share a treasurer and chief executive officer, but those officers have had no direct involvement in the management of Tanfield Engineering in more than a year. The two corporate entities observe corporate formalities and maintain separate accounting systems. Tanfield Engineering exercises, complete authority over its daily operations.
¶ 18. The trial court, in denying Tan-field Engineering’s Motion to Dismiss and in finding that Tanfield Engineering is an alter ego of its parent corporation, heavily relied on the fact that 100 percent of the stock is owned by the parent corporation and the fact that the top financial officer and chief operating officer are the same for both corporations. This is contrary to the rule, as stated in Buchanan, 957 So.2d at 978, that corporations are “separate and distinct entities,” despite the fact that a subsidiary may be wholly owned by a parent or that the two may share common officers.
¶ 19. We decline to reach the issue of whether Tanfield Engineering is or is not an alter ego of its parent, but rather, we vacate the trial court’s ruling, based on its erroneous conclusion that Tanfield Engineering is an alter ego merely because it is a wholly owned subsidiary that shares two officers with its parent corporation.

CONCLUSION

¶ 20. The trial court’s decision was contrary to this Court’s precedent that classifies subsidiaries which are wholly owned by their parent corporations and share common officers with their parent corporations, as separate and distinct from their parent corporations. Accordingly, we vacate the court’s order and remand for further proceedings consistent with this opinion.
¶ 21. VACATED AND REMANDED.
WALLER, C.J., LAMAR, CHANDLER AND KING, JJ., CONCUR. RANDOLPH, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY CARLSON, P.J., AND PIERCE, J. DICKINSON, P.J., NOT PARTICIPATING.

. By Agreed Order, Woodall Electric Company, Inc., was dismissed on October 24, 2007.

. Bidgood filed a Motion to Dismiss on November 23, 2010, which was granted by the trial court on January 11, 2011.

. By agreed order, Woodall Electric Company, Inc., was dismissed on October 24, 2007.

. Bidgood filed a Motion to Dismiss on November 23, 2010, which was granted by the trial court, without opposition from Thornton, on January 11, 2011.

. Thornton’s response described Tanfield Engineering as Tanfield Group’s American subsidiary. According to Thornton, Tanfield Group is located in the United Kingdom, while its American (U.S.) subsidiary, Tanfield Engineering, is a Delaware corporation. Both are represented by the same counsel.

.The trial court issued these interrogatories via email to both parties' attorneys. Neither party has raised the issue of whether the trial *697 court erred in relying on its own request for discovery in ruling on Tanfield Engineering's Motion to Dismiss.

. In its brief, Tanfield Engineering lists the issues as follows:
A. Whether the trial court erred in applying the federal court case factors for the determination of an alter ego theory?
B. Whether the trial court erred in finding that Tanfield Engineering is an alter-ego of Tanfield Group, PLC which was the trial court’s basis for denying Tanfield Engineering's Motion to Dismiss?
For the sake of brevity, the issues have been consolidated.

. Alter ego is defined as: “A corporation used by an individual in conducting personal business, the result being that a court may impose liability on the individual by piercing the corporate veil when fraud has been perpetrated on someone dealing with the corporation.” Black’s Law Dictionary 86 (8th ed.2007).

. Piercing the corporate veil is ‘‘[t]he judicial act of imposing personal liability on otherwise immune corporate officers, directors, and shareholders for the corporation’s wrongful acts.” Black’s Law Dictionary 1184 (8th ed.2007).

. These factors include whether:
(1) distinct and adequately capitalized financial units are incorporated and maintained: (2) daily operations of the two corporations are separate; (3) formal barriers between management of the two entities are erected, with each functioning in its own best interests; and (4) those with whom the corporations come in contact are apprised of their separate identity. Other factors deemed important by the commentators and Texas courts are: (1) common stock ownership; (2) the method and degree of financing of the subsidiary by the parent; (3) common directors or officers; (4) separate books and accounts; (5) common business departments; (6) extent to which contracts between parent and subsidiary favor one over the other; and (7) connection of parent’s employee, officer or director to subsidiary's tort or contract giving rise to suit.
Hargrave, 710 F.2d at 1162-63 (emphasis added).

. However, it is noteworthy that this Court, in Buchanan, 957 So.2d at 977, although declining to adopt the federal test, did deem the ten factors used in Gammill v. Lincoln Life & Annuity Distributors, 200 F.Supp.2d 632, 634-35 (S.D.Miss.2001), to be “instructive on the alter ego theory.”

. "In construing our rules, we look for guidance to the federal cases since the [Mississippi Rules of Civil Procedure] were patterned after the Federal Rules of Procedure.” Bourn v. Tomlinson Interest, Inc., 456 So.2d 747, 749 (Miss.1984) (citing Stringfellow v. Stringfellow, 451 So.2d 219, 221 (Miss.1984)).

.However, it is noteworthy that this Court, in Buchanan, 957 So.2d at 977, although declining to adopt the federal test, did deem the ten factors used in Gammill v. Lincoln Life & Annuity Distributors, 200 F.Supp.2d 632, 634-35 (S.D.Miss.2001), to be “instructive on the alter ego theory.”