# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CA-01380-COA

ALLSTATE INSURANCE COMPANY        APPELLANT/
CROSS-APPELLEE

v.

GLORIA MILLSAPS, INDIVIDUALLY AND IN      APPELLEES/
HER CAPACITY AS THE ADMINISTRATOR    CROSS-APPELLANTS
OF THE ESTATE OF WILLIE MILLSAPS,
DECEASED

| | |
|---|---|
| DATE OF JUDGMENT: | 08/11/2017 |
| TRIAL JUDGE: | HON. EDDIE H. BOWEN |
| COURT FROM WHICH APPEALED: | JASPER COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | J. COLLINS WOHNER JR. DAVID GARNER MICHAEL B. WALLACE ROBERT R. STEPHENSON JR. |
| ATTORNEYS FOR APPELLEES: | SAMUEL STEVEN McHARD PAUL MANION ANDERSON |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | REVERSED AND REMANDED - 05/12/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**McDONALD, J., FOR THE COURT:**

¶1. Willie and Gloria Millsaps's home, located in Jones County, Mississippi, burned on

September 3, 2015. After investigating the fire, their insurer, "Allstate"[1] denied the claim.

---

[1] In this case there are two "Allstate" entities: Allstate Insurance Company and Allstate Vehicle and Property Insurance Company. Unless otherwise indicated, we use the term "Allstate" to reference Allstate Insurance Company.

The Millsapses sued Allstate for breach of contract and other contract-related claims in the Circuit Court of Jasper County, Mississippi. A jury found in favor of the Millsapses against Allstate Insurance Company on the Breach of Contract claim and awarded them a total of $970,000 in damages. After reconvening and hearing testimony on punitive damages, the jury awarded the Millsapses an additional $230,000 in emotional damages ($115,000 for each), and $100,000 in punitive damages. The two verdicts totaled $1,300,000. Thereafter, the circuit court awarded the Millsapses attorneys fees of $520,000 and interest of $101,248.87. The total judgment amounted to $1,921,248.87.

¶2.     The court denied Allstate's motion for judgment notwithstanding the verdict or a new trial, and Allstate has appealed. Allstate raises issues concerning whether venue was proper, whether it is liable for breach of contract when it had no contract with the Millsapses, whether it was improperly denied the right to present its defense of the Millsapses' misrepresentations, whether the Millsapses had an insurable interest at the time of the fire, and whether punitive damages were proper. The Millsapses cross-appeal, arguing that the circuit court restricted their voire dire and did not allow them to collect all of their costs. After our review of the record and relevant precedent, we reverse and remand the case for a transfer to the active docket of the Circuit Court of Jones County, Mississippi.

**Facts and Procedural History**

¶3.     Willie was a self-employed truck-driver/small business owner.[2] Using $350,000 of insurance proceeds when his previous home burned in 2009, along with an insurance payout

---

[2] Willie passed away while this appeal was pending.

2

from the death of one of their sons, Willie and his wife, Gloria, built another home in Laurel, Mississippi (Jones County). Construction lasted about a year, and the family moved to their new home which located at 30 East Briarwood Drive, Laurel, in 2011. It was a six-bedroom, 5,000 square-foot home—large enough for themselves and their extended family.[3] Willie and Gloria's immediate family expanded in 2014 when they adopted a two-month-old, special-needs child. There was no mortgage on the home.

### *The Millsapses Purchase of the Allstate Policy*

¶4.    In July 2015, Linda Walker, an agent with T.D. Graham Insurance Agency, who was authorized to sell Allstate products, cold-called Willie through telemarketing software and offered to sell him homeowner's insurance. During this call, Willie agreed and applied for $705,924 in dwelling coverage and $141,185 in contents coverage, subject to underwriting approval. The computer-generated application that Walker submitted listed Willie's prior property insurer as State Farm.[4] Willie was never provided a copy of the application that Walker submitted. When later asked about his prior homeowner insurance, Willie responded that he could not recall if he had any, but he did recall Foremost Insurance drafting his bank account at some point in time.

¶5.    Underwriting of the application was done by Allstate Insurance Company. It

---

[3] Willie had five sons and twenty-three grandchildren. At the time of the fire, two of his sons, DeMarco Cooley, age 28, and Jacques Millsaps, age 22, lived with Willie and Gloria as well as Jacques's girlfriend, Ashailyn McGill. Gloria's parents often stayed with them as well.

[4] According to Allstate, the type of policy that Willie purchased is only available to individuals who have had insurance on the property for the preceding year.

reviewed the limited credit report secured by the Graham agency. An Allstate vendor, Insurance Risk Services, inspected the home on August 6, 2015. After the inspection, the Millsapses were accepted as an underwriting risk and their coverage was increased to $731,567 for the dwelling and $219,471 for the contents based on the inspection. Allstate issued the homeowner's policy as well as a policy covering the Millsapses' 2012 Cadillac CTS and 2006 Lexus GS430. Both policies were written by Allstate's subsidiary, "Allstate Vehicle and Property Insurance Company." The policies were year to year policies. The Millsapses' August premium payment was returned to Allstate Vehicle for insufficient funds. Allstate Vehicle sent the Millsapses a notice that the policy would be cancelled on September 15, 2015, if the premium was not paid. The Millsapses did pay the needed premium with a credit card and avoided cancellation of the policy.

### *Tax Sale*

¶6. Although they had no mortgage on the home, the Millsapses were required to pay annual taxes. They failed to pay the 2012 taxes, and their home was sold at a tax sale in August 2013 to Adair Asset Management Company.[5] The Millsapses had until August 26, 2015 to redeem the property.[6] At the time Willie purchased the homeowner's insurance from Allstate Vehicle in July 2015 and at the time of the underwriting inspection in August,

---

[5] Pursuant to Mississippi Code Annotated section 27-41-59 (Rev. 2013), if property taxes for a particular year are unpaid, the property may be sold at a tax sale held in August of the following year.

[6] Under Mississippi law, owners have two years to redeem their property by paying the amount the tax sale purchaser paid plus interest. Mississippi Code Annotated section 27-45-3.

the Millsapses had not yet redeemed the property.

¶7.     During the last two weeks of August 2015, Willie and Gloria's special needs daughter was hospitalized at the Batson Children's Hospital in Jackson, Mississippi, and they forgot to make the tax-redemption payment. On August 26, 2015, when the redemption period expired, Adair's title matured, but no tax deed was issued. In September, 2015, prior to the fire that is the subject of this case, Gloria contacted Kamesha Mumford, an attorney/agent for Adair Asset, and discussed the amounts needed for the Millsapses to obtain Adair's interest. In October 2015 the Millsapses sent Mumford a cashier's check for $16,912.50. At trial, Mumford testified that because the chancery clerk had failed to give the proper statutory notice to the Millsapses, in her opinion the tax sale was void. On January 21, 2016, Adair quitclaimed its interest in the property back to the Millsapses.[7] The Millsapses failed to report the tax sale, missed redemption date, and its aftermath to Allstate Vehicle.

### The Fire

¶8.     On the night of September 3, 2015, Willie was on the road delivering a load interstate. Gloria was at home with their special needs child; Jacques was out with his girlfriend, Ashailyn McGill. A grease fire erupted, which Jacques found on his return to the home.[8] Jacques put it out, but the fire department was still called. Although the firefighters

---

[7] Ultimately, on September 8, 2016, the Millsapses filed an action in the Jones County Chancery Court (Cause No. 2016-0612) to set aside and void the tax sale. On October 20, 2016, the chancery court signed an agreed order, setting aside and voiding the tax sale.

[8] There was a dispute over whether the home had smoke detectors. During the fire investigation, Jacques and his girlfriend told Allstate that the smoke detectors were going off when he found the fire. Willie and Gloria said they did not have working smoke detectors at the time. Insurance Risk Services' inspection found smoke detectors.

confirmed that the fire was out, they advised Gloria and the family to spend the night elsewhere due to the smoke damage. So Gloria and the family left to spend the night with Willie's mother in Heidelberg, Mississippi (Jasper County). Later that night, the fire reignited and the home was totally destroyed along with the Millsapses' Lexus.

### *Report to Allstate*

¶9.     Willie reported the fires to his insurer, Allstate Vehicle. At this point, Allstate, which adjusted claims for Allstate Vehicle, began its investigation. A few days after the fire, on September 8, 2015, Willie and Gloria met with two Allstate representatives, Wilbur Jordan and Craig Restor, at the home. Also present were Deputy State Fire Marshall Kevin Butler and Danny Benton of EFI Global, which Allstate had retained to determine the cause and origin of the fire. Benton took samples of the debris for testing.

¶10.    Jordan and Restor recognized that the home was a total loss. After the fire, Allstate Vehicle paid for a motel room where Gloria and the minor child stayed. But they suffered from bed bugs there, so Allstate moved them to another hotel. Ultimately it was less expensive for the Millsapses to rent a house than stay in hotels. Willie's son, Keyon Coleman, owned a house in Heidelberg and offered to rent it to them. Keyon and Restor met and agreed upon a $2,200 per month lease amount. When the Millsapses moved in, they rented furniture from Aaron's. All of these living expenses were paid by Allstate Vehicle pursuant to the policy's requirements.[9] The Millsapses also received a Personal Property Inventory form from Kerri Steger, the Allstate contents claims manager, to complete.

---

[9] Technically the payments were made by a company called "CR Temporary Housing."

### *Allstate's Investigation of the Millsapses' Claim*

¶11.    Initially, Allstate was concerned about potential arson.  EFI submitted its report on September 22, 2015.  In it, EFI said that of the four debris samples tested, one tested positive for "an ignitable liquid residue in the range of medium petroleum distillates.  Some items in this range include mineral spirits, paint thinner and some charcoal starter fluids."  The investigator could not rule out the possibility that the ignitable liquid may have been stored in a cabinet.  The report determined that "the remaining physical evidence does not indicate the form of ignition . . . the cause of the fire is classified as undetermined."  Claims adjuster Jordan also spoke to Deputy Butler about other possible sources of ignition that may point to arson.[10]  But Jordan was not aware that the State Fire Marshal's office had determined that in its opinion the fire was intentionally set, until a copy of the report was obtained by subpoena just prior to trial in July 2017.[11]

¶12.    Under their policy, the Millsaps had the duty to cooperate with the investigation, provide documents, submit to questioning under oath, and give truthful answers.

¶13.    The Millsapses submitted lengthy lists of personal property they claimed were lost in the fire, giving the value and approximate age of each item.  They totaled the personal property lost at $406,214.82.  As part of its investigation, Allstate Insurance took Willie's

---

[10] Deputy Butler issued a report in October 2015, concluding that in his opinion, the fire was the result of arson.  However, Allstate did not obtain this report until July 2017, just prior to trial.

[11] Allstate Vehicle did not deny the Millsapses' claim on the basis of arson, nor did it raise arson as an affirmative defense in the lawsuit that was filed.  But Allstate's claims log on the matter shows that it still continued to investigate the possibility of arson even after receiving EFI's report.

7

statement shortly after the fire and thereafter conducted two "Examinations Under Oath" (EUO) of Gloria and Willie (one in October 2015 and another in December 2015). In connection with those, the Millsapses produced numerous documents requested by Allstate, including tax returns from 2011 through 2014 and bank statements from 2013 through September 2015. EUO's of Jacques, and Jacques's girlfriend Ashsailyn were also taken.

¶14. In his statement, Willie said that his prior insurer was Foremost and that there were no judgments against him or liens on the property. Claims adjuster Jordan later learned from Foremost that it had insured Willie's prior home that burned down in 2009; thereafter Foremost cancelled the policy for non-payment. After contacting State Farm, the alleged prior insurer noted on the application, Jordan learned that the Millsapses were only considered prospects by State Farm which never actually insured them. Consequently, it appeared that the Millsapses had no insurance in effect on the home at the time of their Allstate Vehicle application. Allstate employees later testified that the insurance the Millsapses purchased was only available to persons who currently had insurance on their property.

¶15. Allstate also hired Ike Farris, an abstractor in Hattiesburg, Mississippi, to confirm the title to the Millsapses' property. On October 12, 2015, Farris reported that he found no judgment, construction or tax liens on the property as well as no deeds of trust. But he did note that the 2012 taxes had been unpaid, and the property had been sold to Adair. Farris learned, and included in his report, that the clerk had sent notices of the expiration of the Millsapses' right to redeem the property to several different addresses and that these notices

had been returned "not found." Consequently, despite the tax sale, Farris reported that title to the property was still vested in Willie and Gloria.[12]

¶16. Allstate Insurance continued its investigation, including a review of the tax returns submitted by the Millsapses and checking account records from Community Bank. It sought a second opinion from First American Abstract Company and learned that a judgment had been entered against Willie by Community Bank and that there was another prior judgment against Willie by Transport Funding LLC. In December, Jordan spoke to Rodney Livingston with the Section 8 Housing Authority who said that when the rental property the Millsapses were now living in was last in Section 8's program in January 2015, it rented for between $450 and $550 per month.

¶17. In January of 2016, Allstate Vehicle stopped paying the Millsapses' living expenses because the Millsapses refused to sign an "advance payment agreement" that Allstate Insurance had demanded. By its terms, the Millsapses would be required to reimburse Allstate Vehicle for any payments made if the claim were eventually denied. Feeling that this was not required under the terms of the policy, the Millsapses objected.[13]

¶18. Allstate's personal property adjuster, Kerri Steger, worked for several months reviewing the valuations of the items that the Millsapses claimed were lost. Allstate retained forensic accountant James Koerber who reported on March 31, 2016, that in his opinion, the

---

[12] On January 21, 2016, Adair quitclaimed its interest in the property to the Millsapses. This quitclaim deed was sent to Allstate by the Millsapses' attorney on February 15, 2016.

[13] The Millsapses claim that this demand for an "advance payment agreement" constituted a breach of contract, which they say occurred in Jasper County, Mississippi.

9

Millsapses could not have purchased items worth $185,476 within the two years prior to the fire, with only reported income of $20,000 to $30,000 and, by their testimony, without loans or credit cards.

### *Denial of the Claim*

¶19.    On April 8, 2016, Wilbur Jordan signed correspondence on behalf of Allstate Vehicle denying the Millsapses' claim[14] and saying that Allstate Vehicle did not "cover any loss or occurrence in which any insured person has concealed or misrepresented any material fact or circumstance." According to the denial letter, Allstate Vehicle said it had concluded the following: (1) that the Millsapses had made misrepresentations regarding their financial condition and regarding "material aspects" of their claim; (2) that there were discrepancies in the information provided by the Millsapses concerning their claim; (3) that the Millsapses intentionally overstated the value of the property damaged by the fire and overstated their claim for additional living expenses; and (4) that the Millsapses did not have an insurable interest in the house because the property was sold at a tax sale and not timely redeemed. Allstate Vehicle also said that due to concealment and misrepresentations made by the Millsapses during the investigation of the claim, a full investigation could not be completed. Consequently, Allstate Vehicle reserved the right to deny the claim for additional reasons that may become known. Notably, Allstate Vehicle did not deny the claim because of arson.

### *Court Proceedings*

¶20.    The Millsapses filed a bad faith breach of contract suit in the Circuit Court of Jasper

---

[14] Jordan testified that he was an Allstate employee who apparently performed duties for both companies.

County, Mississippi, on April 18, 2016. The defendants included only "Allstate Insurance Company," Wilbur Jordan, Adair Asset Management LLC, Kamesha Mumford, and John Does 1-5.[15]

### *Removal and Remand*

¶21. Allstate Insurance removed the case to federal court in the Southern District of Mississippi, alleging fraudulent joinder of Mississippi defendants to defeat diversity jurisdiction. While the case was pending in federal court, Allstate Insurance filed an answer on behalf of itself and "Allstate Vehicle and Property Insurance Company." The Allstate defendants denied the allegations, including the allegation that venue was proper in Jasper County, Mississippi. Although they denied venue, the Allstate defendants did not plead improper venue as an affirmative defense.[16] They did plead other affirmative defenses, including, among other things, the Millsapses' lack of an insurable interest in the property as of the date of the fire, material misrepresentations by the Millsapses or concealment of relevant information during the investigation of the claim, and the Millsapses' failure to comply with the policy. Allstate did not plead arson as a defense.

---

[15] In their complaint, the Millsapses pleaded claims for payment of policy benefits; for bad faith investigating, delay and failure to pay benefits, for negligence and gross negligence, for breach of contract and tortious breach of contract, for breach of the covenant of good faith and fair dealing, for negligent and intentional infliction of emotional distress, and, against Jordan alone, claims of defamation/libel/and slander. The Millsapses requested compensatory damages, special damages, emotional distress damages, incidental and consequential damages, plus attorneys fees and costs, punitive damages and pre-and post-judgment interest.

[16] In federal court, jurisdiction in the Southern District of Mississippi was proper. So there would be no need to plead improper jurisdiction had the case remained in federal court.

¶22. The federal court remanded the case to the Jasper County Circuit Court on October 17, 2016, and the parties engaged in discovery. The Allstate defendants did not refile or amend their answer to the complaint. On October 21, 2015, the Millsapses propounded discovery to the Allstate defendants and filed a motion for a scheduling order. On October 26, 2016, the Allstate defendants propounded interrogatories and requests for production of documents to the Millsapses.

### *Motion for Change of Venue*

¶23. On December 8, 2016, the Allstate defendants filed a motion for change of venue arguing that the home that burned was located in Jones County and that there was no basis for venue in Jasper County. By the time that motion was heard on January 10, 2017, the Allstate defendants had also taken two depositions. The court denied the motion for a change of venue, holding that the Allstate defendants had failed to plead the issue as an affirmative defense and that they had waived the defense as well by participating in litigation.

### *Motion to Amend Complaint*

¶24. On November 17, 2017, the Millsapses filed a "Motion to Amend Complaint" which was revised on December 27, 2017, by the filing a "Motion to Amend Complaint to Correct Misnomer." In the motion, the Millsapses alleged that the true name of the defendant was "Allstate Vehicle and Property Insurance Company." Both Allstate Insurance Company and Allstate Vehicle and Property Insurance Company responded that they had no objection to the proposed amended complaint, but they sought a dismissal of "Allstate Insurance

Company." The Millsapses did not oppose this but at the hearing on the motion on January 10, 2017, the court suggested that the dismissal of Allstate may be premature and deemed Allstate Vehicle to already be a party by virtue of its answering the complaint. An order to that effect was entered on March 14, 2017.

### Motions for Summary Judgment

¶25. On February 17, 2017, the Millsapses filed a motion for partial summary judgment on the issue of their insurable interest in the home at the time of the fire. They argued that on September 8, 2016, they had filed suit against the chancery clerk of Jones County, Mississippi, to set aside and void the August 26, 2015 tax sale of their home to Adair. On October 21, 2016, the chancery court granted the Millsapses relief and voided the tax sale. On the basis of that chancery court's order, the Millsapses moved for partial summary judgment against Allstate[17] in the circuit court case, seeking a ruling that they did indeed have an insurable interest in their property at the time of the fire and that they were entitled to payment under the policy for the dwelling and its contents.

¶26. The Allstate defendants[18] responded that chancery court order did not constitute res judicata of the issue because Allstate was not party to the chancery court action. Further, they argued that the Millsapses' motion should be denied because the lack of an insurable

---

[17] The motion contains no differentiation between the two companies and was filed against "Allstate."

[18] They responded as "Allstate Insurance Company, which is incorrectly named in the case at bar, and Allstate Vehicle and Property Insurance Company (hereinafter, Allstate Vehicle and Property Insurance Company is referred to as "Allstate")." Allstate continued to refer to itself in this manner in subsequent pleadings.

interest was not the only reason Allstate denied the claim. Other reasons included "multiple

misrepresentations made by the plaintiffs during the investigation of the claim."[19] Allstate

[19] Among these were:

- Whether the home was actually finished. Jacques, the Millsapses' son, testified at his examination that most of the upstairs was not completed. Sheet-rocking the upstairs was incomplete and his was the only bedroom of the four upstairs that was finished. To the contrary, Willie testified that the house was complete except for a remodel on the bathroom.

- Whether there were operating smoke detectors. Willie and Gloria said there weren't any; Jacques and Ashailyn testified that they were going off or trying to go off at the time they found the kitchen fire.

- Whether the Millsapses were truthful about their financial condition. Allstate claimed that the Millsapses misrepresented their financial condition which, under Mississippi court precedents, can establish a motive to commit arson. They attached an affidavit from Ezell Satterwhite, an Allstate employee, who said that there was evidence that the fire may have been incendiary in origin. Allstate quoted from the EFI Global report about the samples that had tested positive as incendiary agents. Allstate also attached an affidavit and report from James Koerber, a CPA, who reviewed the Millsapses' tax returns, bank statements, and the EUO examinations taken. Koerber opined that the Millsapses' income of $30,000 per year ($20,000 from Willie and $10,000 from Gloria who collected social security disability benefits) was insufficient for them to have purchased $86,717 worth of personal property within the twelve months prior to the loss, or $96,759 for items purchased 13 to 24 months prior to the loss.

- Whether the Millsapses had outstanding judgments against them. Allstate said that Willie misrepresented his financial condition with respect to judgments against him. In his recorded statement, Willie said there were none. But Allstate found three: a judgment in favor of Doors by Design for $8,846.50 recorded on January 6, 2012; a judgment recorded on September 3, 2015 in favor of Community Bank of Ellisville for $10, 692.86; and a judgment in favor of Transport Funding, LLC for $18,333.06 recorded on December 26, 2012.

- Whether the Millsapses had prior homeowners insurance coverage.

14

also asked the court to defer from ruling on the summary judgment motion until further discovery could be completed, including the deposition of the fire marshal who had investigated the fire.

¶27. On July 6, 2017, Allstate sought dismissal through a Motion for Summary Judgment because it was not a party to the insurance contract.

¶28. On July 17, 2017, the court heard argument on the various motions filed. It denied the Millsapses' motion for partial summary judgment on the issue of insurable interest.[20] It also denied Allstate Vehicle's motion for partial summary judgment on the Millsapses' claims of bad faith, punitive damages, and attorneys fees. The court denied Allstate Insurance Company's motion for summary judgment. The Allstate defendants filed a motion to bifurcate the trial to hear testimony of the breach of contract claims first (phase one) and then, if warranted to hear the negligence, bad faith, ex-contractu and punitive damages evidence thereafter (phase two). The court granted this motion.

### *The Trial*

1. *Breach of Contract Phase (July 31, 2017, through August 4, 2017)*

---

- What was the true value of Gloria's wedding ring.

- Whether Gloria was operating a home business. Gloria has been disabled since 1992 and was drawing social security disability payments. She testified that she has not been employed since. However, Jacques testified that Gloria operated a home health care service under the name Blessed Personal Care until 2014.

[20] Prior to the circuit court's hearing on the Millsapses' motion concerning its insurable interest, Allstate removed the case a second time on April 10, 2017. Again, the federal court remanded on June 4, 2017.

15

*A.      The Millsapses' Presentation*

¶29.    At trial, the Millsapses called several Allstate Insurance employees as witnesses including Kerri Steger (the Millsapses' contents claim adjuster), Troy DePriest (the claims manager), Gregory Cobb (an Allstate regional manager), and Paula Ogilvie (from Allstate's special investigations unit).  From these witnesses, the Millsapses established the facts surrounding the investigation.  They also called Ike Farris, Kamesha Mumford (by deposition), Willie Millsaps, and  their insurance industry expert, Craig Nierman.  Except for Willie, the Allstate defendants reserved questioning the Millsapses' live witnesses until they put on their case.

¶30.    Gregory Cobb, an Allstate employee who worked in the Mississippi regional office, testified that "Allstate Insurance Company" was a "d/b/a", i.e. doing business as, for several subsidiaries, including Allstate Vehicle and Property Insurance Company.  He said that all of the underwriting and adjusting is done by Allstate Insurance Company.

¶31.    Greg Nierman, an attorney from Iowa City, Iowa, was qualified to testify as the Millsapses' insurance industry expert.  He did not distinguish between the two companies and gave his opinions about "Allstate."  For example, Nierman said "Allstate" did not pay the claim—not within the sixty days required by the policy, and not ever.  Nierman also testified that the advance payment agreement that "Allstate" wanted the Millsaps to sign in order to receive further living expenses payment did not comply with industry standards. Nierman had never seen such an agreement in the thousands of claims he had handled. Moreover, there is nothing in the policy itself that would require the Millsapses to sign such

16

an agreement.  The Allstate defendants chose not to cross-examine Nierman.

¶32.  Paula Ogilvie, an employee of Allstate Insurance Company in its special investigations unit, was asked to read from the claims manual which stated:

> When a claim involves or could involve a coverage defense, prompt action is important because of the doctrine of waiver and estoppel.  If an insured has not complied with a particular  policy condition and the claim adjuster has begun  adjusting the claim, Allstate may be considered  to have waived its right to deny the claim based  on noncompliance with the policy condition. Generally, we would be estopped from later using this defense to deny the claim.   A waiver may not be clearly indicated or stated. It may be implied from the claims person's conduct.

¶33.  At the end of their presentation, the Millsapses moved to amend the pleadings to conform to the proof although their counsel could not articulate just what pleading was amended by the proof presented.  The court granted the motion nonetheless.

### B.    Allstate's Motion for a Directed Verdict

¶34.  The Allstate defendants moved for a directed verdict, which the circuit court denied.

¶35.  The court heard further argument on the issue of Allstate's waiver of its defense of the Millsapses'  misrepresentations, both at the time of the application and during investigation of the claim.[21]   After hearing arguments of counsel, the court held that the Allstate defendants had waived the right to present a defense of misrepresentations by the Millsapses because Allstate knew of judgments against the Millsapses when it wrote the policy and because of the wording in Allstate's claim's manual read by Ms. Ogilvie.

### C.    Allstate's Presentation

¶36.  Being barred from presenting evidence of misrepresentations to the jury, the Allstate

---

[21] No distinction was made between the two companies.

17

defendants began their defense with a proffer of evidence to the court made by counsel about what testimony from various witnesses would show, including Deputy State Fire Marshal Kevin Butler and Dave Berry with EFI Global. Counsel also presented excerpts from the depositions of Kamesha Mumford, Daniel Callahan, the owner of Doors by Design, Ashailyn McGill, and Rodney Livingston, who was employed with the Housing Choice Voucher Program and who would testify that the home that Allstate paid $2200 per month for the Millsapses to live in had a prior rental value of between $450 and $550.

¶37.    Continuing its proffer outside the presence of the jury, Allstate called Jim Koerber, its expert CPA, to testify about the Millsapses' ability to afford the personal property they claimed they lost in the fire. With Willie's reported income from his business ranging from $13,721 to $21,168 and Gloria disability payments of $10,000 per year, it was Koerber's opinion that they could not have purchased $86,717 in personal items in the twelve months prior to the fire. Nor could they afford in the two years prior to the fire to have purchased another $96,759 in personal items.

¶38.    Allstate next proffered the deposition testimony of Wilbur Jordan concerning the recorded statement he took from Willie and other facts found during his investigation

¶39.    In its final proffer, the Allstate defendants called Greg Cobb to testify among other thing that to qualify for the insurance that the Millsapses had purchased, a homeowner was required to have twelve months of prior insurance with no more than 30 days lapse in coverage.

¶40.    After the proffers, the Allstate defendants called Brittany Welch to testify before the

jury.  She worked at the Jones County Chancery Clerk's office and explained the tax sale of the Millsapses' property.

¶41.  The Allstate defendants rested and the Millsapses moved for directed verdict on the issue of insurable interest which the court granted, finding that they did have an insurable interest at the time of the fire.

### D.  Jury Instructions and Verdict

¶42.  The court considered the jury instructions presented by both parties.  Among these were instructions on the elements of a breach of insurance contract claim.  There were several instructions that combined Allstate Insurance Company and Allstate Vehicle and Property Insurance as actors; others just referred to the "Allstate insurance policy" and breaches by "Allstate."

¶43.  In the form of the verdict instruction, the jury was given three options:

> If you find for the Millsapses and against Allstate Insurance Company, your verdict should be in the following form:
>
> "We, the jury, find for the Millsapses and against Allstate Insurance company and assess their damages as follows." You will give an amount for the dwelling, an amount for the contents, and amount for additional living expenses and an amount for debris removal.
>
> If you find for the Millsapses and against Allstate Vehicle and Property Insurance Company, your verdict should be in the following form:
>
> "We, the jury, find for the Millsapses and against Allstate Vehicle and Property Insurance company and assess their damages as follows." You will give an amount for the dwelling, an amount for the contents, and amount for additional living expenses and an amount for debris removal.
>
> If you find for the Millsapses and against Allstate Insurance Company and Allstate Vehicle and Property Insurance Company, your verdict should be in

the following form:

> "We, the jury, find for the Millsapses and against Allstate Insurance Company and Allstate Vehicle and Property Insurance company and assess their damages as follows." You will give an amount for the dwelling, an amount for the contents, and amount for additional living expenses and an amount for debris removal.

> If you find for the defendants: "We, the jury, find for the defendants."

¶44. The jury returned a unanimous verdict for the Millsapses against only Allstate Insurance Company and awarded them a total of $970,000 for their dwelling, contents, additional living expenses, and debris removal.

  2.     *Bad Faith and Punitive Damages Phase (August 5, 2017)*

¶45. The court then considered the arguments of counsel on the extent of testimony to be presented in phase two. The Millsapses asserted that they were only seeking bad faith damages for the failure to pay the dwelling coverage. They contended that the misrepresentations alleged by Allstate concerned the value of personal property and were thus irrelevant. The court agreed and barred Allstate Insurance from presenting any evidence of misrepresentations concerning the contents.

¶46. In the punitive damages phase, the Millsapses called Willie and their expert, Nierman, to testify. After testimony from the witnesses, the parties stipulated that Allstate Insurance Company's 2016 net worth was $15,569,947,624.00.

¶47. The jury was excused and the parties argued to the court whether punitive damages were warranted. The court reviewed the evidence and found that there was a jury question on the issue of bad faith.

20

¶48. The jury was recalled and Allstate Insurance Company proceeded to present its defense. It called Gregory Cobb and Troy DePriest to explain that the initial inspection of the property was not a true appraisal of value. Allstate Insurance then called its expert, James O'Malley, a certified Chartered Property Casualty Underwriter, who testified that a claim of this size needed a lot of investigation. Allstate had the right to an examination of the Millsapses and to receive a signature from them asserting to its truth. He said that there were materials that the Millsapses did not send in so Allstate could not finish its investigation. In his opinion, Allstate could not pay the claim within 60 days because of the outstanding materials owed.

¶49. The jury was instructed and returned a verdict in favor of the Millsapses, awarding them emotional damages of $115,000 for each, and $100,000 for punitive damages.

### Award of Attorney's Fees

¶50. On August 5, 2017, after the jury returned the punitive damage award, the court considered the Millsapses' request for attorney's fees and interest. With no further pleadings filed, the Millsapses' counsel said that he had a 40% contract with the Millsapses and with a total judgment of $1,300,000, the fee would be $520,000 plus costs. He also calculated interest on the dwelling claim, which was fixed at 8% interest from November 9, 2015, which came to $101,248.87. The court awarded the Millsapses both the fee and interest as calculated.

### Post-trial Motions

¶51. The Millsapses filed a motion for reimbursement of costs under Rule 54 of the

Mississippi Rules of Civil Procedure. They claimed to be owed $64,478.63, $38,000 of which were the expenses of their expert, Nierman. The court would not allow litigation expenses but only filing and process fees. It ordered Allstate Insurance Company to pay the Millsaps $161.00 in costs.

¶52. Allstate filed a "Motion for Judgment Notwithstanding the Verdict." It argued (1) that there was no basis for a judgment against Allstate Insurance Company for breach of contract when the policy was issued by a different entity; (2) that the Millsapses breached the contract with their numerous misrepresentations concerning judgments, their financial condition and income, and prior insurance, voiding the policy; (3) that there was arguable reason for investigating and denying the claim that precluded punitive damages; (4) that attorney's fees were not warranted because there was no valid punitive damage award, because the amount was excessive, and not supported with proper documentation. In rebuttal to Allstate's attorney's fee argument, the Millsapses produced an affidavit of attorneys Phil Jones and Rogen Chhabra saying that the Millsapses' attorneys put in time worth $549,000. Therefore, the court's award of $520,000 was proper. After hearing argument, the court denied Allstate Insurance Company's Motion for Judgment Notwithstanding the Verdict, but it granted Allstate's request to appeal without bond.

¶53. On appeal, Allstate raises the following issues:

I. Was Allstate improperly prohibited from trying its defense of the Millsapses' concealment and misrepresentation?

II. Is Allstate entitled to judgment as a matter of law because no reasonable jury

22

could find that plaintiffs complied with their contractual duty to give truthful answers in the claims investigation?

III. Was the directed verdict against Allstate on the Millsapses' insurable interest erroneous?

IV. Was Allstate denied due process in the legally baseless punitive and extra-contractual phase of the trial?

V. Was venue proper in Jasper County?

VI. Was Allstate Insurance Company entitled to judgment as a matter of law because it was not a party to the insurance contract?

¶54. The Millsapses cross-appealed on the following issues:

I. Whether the lower court erred by not allowing all of the Millsapses' attorney's costs as provided under Rule 54.

II. Whether the circuit court improperly restricted the Millsapses' right to *voire dire* the venire.

**Standard of Review**

¶55. "Viewing the evidence in the light most favorable to the nonmovant, if the verdict can be supported by the evidence, then neither a directed verdict nor a JNOV is appropriate. Such motions are reviewed de novo." *Miller v. Vicksburg Masonic Temple*, 288 So. 3d 372 (¶15) (Miss. Ct. App. 2019) (citations omitted), *cert. denied*, 287 So. 3d 218 (Miss. 2020). "An abuse of discretion standard of review is applied by this Court when reviewing the trial court's denial of a motion to change venue." *Herman Grant Co. v. Washington*, 214 So. 3d

266, 270 (¶12) (Miss. 2017). "When reviewing fact-based findings, this Court will only examine whether the trial court abused its discretion and whether there was substantial evidence supporting the determination." *Weir v. Mayze*, 287 So. 3d 941, 943 (¶4) (Miss. 2020).

**Discussion**

¶56. A threshold question in this case is the proper venue in which it should have been filed. Our ruling on this issue precedes the examination of the other issues.

> **I.    Whether Jasper County, Mississippi, was a proper venue, and if not, did Allstate waive its challenge to venue?**

¶57. The home that burned was located in Jones County, Mississippi, yet the Millsapses filed their complaint in Jasper County Circuit Court. While the case was in federal court after Allstate Insurance removed it, the Allstate defendants answered and denied that venue was proper. But they did not plead improper venue as an affirmative defense. When the case was remanded, the Allstate defendants did not amend their answer at any time. Thereafter the parties engaged in some discovery.

¶58. The Allstate defendants filed a motion for change of venue on December 8, 2016. In response, the Millsapses argued that venue was proper in Jasper County pursuant to the venue statute because they said substantial events that caused their injuries occurred there. The circuit court denied the motion for change of venue, finding that the Allstate defendants had failed to plead the issue as an affirmative defense. In the alternative, the court found that by actively participating in litigation, they had waived the defense.

> *A.    Was Jasper County, Mississippi, a permissible venue?*

24

¶59. "Venue is a function of statute." *Forrest Gen. Hosp. v. Upton*, 240 So. 3d 410, 415 (¶21) (Miss. 2018). The relevant venue statute in this case is Mississippi Code Annotated section 11-11-3(1)(a)(i) (Rev. 2004), which provides:

> Civil actions of which the circuit court has original jurisdiction shall be commenced in the county where the defendant resides, or, if a corporation, in the county of its principal place of business, or in the county where a substantial alleged act or omission occurred or where a substantial event that caused the injury occurred.[22]

The plaintiff selects among the permissible venues and his choice must be sustained unless there is no credible evidence supporting his claim for venue. *Forest Gen. Hosp.*, 240 So. 3d at 415 (¶22). "However, venue is a valuable right to the defendant as well and timely objections to improper venue must be honored." *Id.*

¶60. In this case, the Millsapses sued Kamesha Mumford who resided in Hinds County, Mississippi, and Wilbur Jordan who resided in Harrison County, Mississippi.[23] Accordingly, suit could have been filed in either Hinds or Harrison County. Even if these defendants failed to seek a change of venue, the Allstate defendants were entitled to argue that the county of residence of these individual defendants required suit to be filed there. *Am. Family Life Assur. of Columbus v. Ellison*, 4 So. 3d 1049, 1051-52 (¶¶10, 11) (Miss. 2009).

---

[22] Prior to January 1, 2003, there had been a separate venue statute, Mississippi Code Annotated section 11-11-7, for suits against out-of-state insurance companies that permitted venue in a Plaintiff's county of residence if the Plaintiff served the insurance commissioner as well. That statute was repealed, *see* 2002 Miss. Laws ch. 4, §2 (3d Exec. Sess.) (effective January 1, 2003), and such suits now are governed by Mississippi Code Annotated section 11-11-3.

[23] The Millsapses also sued Allstate and Adair, both out-of-state corporations. There was no county listed in the complaint for the principal places of business for these corporations.

¶61. The only remaining option open to the Millsapses for venue was the county where a substantial act or omission occurred or a substantial event occurred that caused injury. The fire which caused the Millsapses' loss occurred in Jones County, making venue proper in Jones County. Thus, pursuant to the plain language of the statute, the Millsapses' action should have been filed in Jones, Hinds, or Harrison Counties unless they can show a "substantial act or omission" or a "substantial event causing injury" that occurred in Jasper County.

¶62. The Millsapses argue that Jasper County is also a permissible venue because they say a substantial event causing them injury occurred in Jasper County, namely that Allstate discontinued paying living expenses while the Millsapses were living in Jasper County. They also argue that Allstate sent them the denial letter that they received in Jasper County, Mississippi. Prior to that, Allstate had approved their move to Jasper County and had made housing payments for their rental home in Jasper County. When Allstate discontinued making those payments, the Millsapses were injured. Allstate counters that these were not substantial events.

¶63. The Mississippi Supreme Court has held that simply experiencing the effects of an act or omission in a county is insufficient to establish venue. *Am. Family Life Assur. of Columbus*, 4 So. 3d at 1051 (¶10). In *Medical Assurance Co. of Miss. v. Myers*, 956 So. 2d 213, 219 (¶24) (Miss. 2007), the supreme court held that a doctor's receipt in Holmes County, Mississippi, of the notice of non-renewal of his insurance policy did not constitute a substantial act or substantial injury there to give Holmes County venue. "Dr. Myers's

receipt of information in Holmes County is a passive function of his presence there and is not a substantial event causing the damages he claims." *Id.* Specifically "where the . . . basis of the suit is an act or omission by a party [defendant], venue may lie in the county in which that party's act or omission took place, not the county in which the plaintiff acted." *Wood v. Safeway Ins. Co.*, 114 So. 3d 714, 718 (¶12) (Miss. 2013) (quoting *Holmes v. McMillan*, 21 So. 3d 614, 619 n.5 (Miss. 2009). Therefore the Millsapses' receipt of Allstate's denial of a claim letter or denial of future living expenses in Jasper County did not give rise to venue there.

¶64. Of the four choices for venue, the residency of a defendant or location of a defendant's principal place of business are the basis for the first two; but for the substantial act or event options, focus is on the acts of the defendant, in this case the Allstate defendants. *Hedgepeth v. Johnson*, 975 So. 2d 235, 238 (¶10) (Miss. 2008). In *Hedgepeth* the plaintiffs claimed losses to their personal property from Hurricane Katrina. *Id.* at 240 (¶15). In addition, the plaintiffs also claimed that while the adjusters were investigating the claim in Jackson County, the adjusters urged plaintiffs to commit fraud and say that some lost items were on a second floor. *Id.* The supreme court held that venue was proper in Jackson County because of actions of the defendants that took place there. *Id.* at (¶16).

¶65. In this case, there is no basis for venue in Jasper County. No loss occurred there. No Allstate representative did anything in Jasper County that could be considered a substantial act or event. The Millsapses' receipt in Jasper County of information from the Allstate defendants including the denial of claim letter and Allstate's decision to no longer pay their

living expenses does not give rise to venue under *Myers*. In *Holmes*, 21 So. 3d at 619 (¶18), our supreme court said:

> With respect to McMillan's breach-of-contract claim against State Farm, the relevant acts to be examined are those associated with the denial of the claim. The record clearly establishes that the decision to reject the plaintiff's settlement demand was made in Alabama, and was communicated by letter which bore an Alabama return address.

Similarly, here all actions of the Allstate defendants occurred outside of Jasper County, and no substantial act by any occurred there. Thus, the Millsapses' lawsuit was not properly filed in Jasper County.

¶66. Even though Jasper County was not a permissible venue, the circuit court found the Allstate defendants had waived their right to challenge venue because they failed to plead improper venue as an affirmative defense in their answer and because they had participated in litigation before bringing forth their Motion. We now review that ruling by the circuit court.

> B.    *Did Allstate waive improper venue by failing to plead it as an affirmative defense?*

¶67. From our review of the law, we conclude that improper venue is a defense that does not need to be affirmatively plead. Rule 8(c) of Mississippi Rules of Civil Procedure requires the pleading of specific affirmative defenses:

> In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense. When a party has mistakenly designated a defense as a counter-claim or a counter-claim as a defense, the

28

court on terms, if justice so requires, shall treat the pleading as if there had been proper designation.

Venue does not appear in this list of affirmative defenses that must be affirmatively pleaded.

But the defense of venue does appear in Rule 12:

> Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counter-claim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion:
>
> . . . .
>
> **(3) Improper venue**,

M.R.C.P. 12(b). Subsection (h) to Rule 12 further states:

> (1) A defense of lack of jurisdiction over the person, **improper venue**, insufficiency of process, or insufficiency of service of process is waived (A) if omitted from a motion in the circumstances described in subdivision (g), or (B) if it is neither made by a motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course.

(Emphasis added).

¶68. In *U.S. Bancorp v. McMullan*, 183 So. 3d 833, 835-36 (¶10) (Miss. 2016), the supreme court summarized when venue can be waived:

> A party can waive the defense of improper venue in multiple ways. The most certain is to fail to plead it. *See Lowrey v. Will of Smith*, 543 So. 2d 1155, 1159 (Miss. 1989) (approving a chancellor's analysis that "Mississippi Rule of Civil Procedure 12(h)(1) provides that a defense of improper venue is waived if it's neither made by [pre-answer] motion or in a responsive pleading. In other words, it can be waived if it's not initially made by a motion or other responsive pleading."). *See also Young v. Huron Smith Oil Co., Inc.*, 564 So. 2d 36, 39 (Miss. 1990) (Regarding Rule 12(h)(1) defenses, "we have consistently held that failure to assert the defense in an answer, motion, or other pre-responsive pleading is a waiver that will be enforced."). Thus, venue is waived if it is neither raised in a pre-answer motion nor in the

29

defendant's answer.

Accordingly, improper venue must be either pleaded as an affirmative defense or raised in a timely filed motion. In this case, the Allstate defendants denied proper venue in their answer, but they did not plead improper venue as an affirmative defense. However, they did file a Motion for Change of Venue. Because they both denied proper venue in their answer and filed a motion for change of venue in accordance with M.R.C.P. 12 (b), we find that the Allstate defendants did not waive the venue issue by inadequate pleading.

> C. *Did Allstate waive improper venue by participating in litigation?*

¶69. In the alternative, the circuit court found that the Allstate defendants had waived venue by participating in litigation. The Mississippi Supreme Court has held that:

> a defendant's failure to timely and reasonably raise and pursue the enforcement of any affirmative defense or other affirmative matter or right which would serve to terminate or stay the litigation, coupled with active participation in the litigation process, will ordinarily serve as a waiver.

*MS Credit Ctr. Inc. v. Horton*, 926 So. 2d 167, 180 (¶44) (Miss. 2006). "We have also said arbitration may be waived where a party substantially invokes the judicial process to the detriment or prejudice of the other party." *Id.* at 179 (¶39). Although *Horton* applied to the litigation-ending defense of arbitration, the supreme court has found that "venue is an affirmative right that generally may be waived or abandoned" in other types of cases. *See Fredericks v. Malouf*, 82 So. 3d 579, 582 (¶16) (Miss. 2012) (waiver of venue in medical negligence case); *U.S.Bancorp*, 183 So. 3d at 834 (¶3) (waiver of venue in suit for wrongful finalization of loan).

¶70. In *U.S. Bancorp v. McMullan*, the supreme court did not find waiver of an improper venue defense when the defendant filed its motion to transfer thirty-three days after the answer to the complaint, *U.S. Bancorp*, 183 So. 3d at 836 (¶12), when the motion was timely pursued and heard within two and a half months, *id.*, and where the defendant had not actively or substantially participated in the litigation. *Id.* at 837 (¶17). The Mississippi Supreme Court found undue delay in pursuing an insufficient service of process defense when the defendant waited two years to bring the issue to the court's attention. *E. Miss. State Hosp. v. Adams*, 947 So. 2d 887, 891 (¶11) (Miss. 2007). However, more recently in *Pollan v. Wartak*, 240 So. 3d 1185, 1191-92 (¶15) (Miss. 2017), the supreme court said:

> Here, the defendants bore the burden of proving that the statute of limitations for Pollan's survival claims had expired, and they relied directly on evidence obtained in discovery to support their argument. In addition, Pollan has failed to show how he was prejudiced by the defendants' delay in pursuing their statute-of-limitations defense. *See MS Credit Ctr. Inc. v. Horton*, 926 So. 2d 167, 180 n.7 (Miss. 2006) (noting that prejudice to the nonmoving party is a factor to be considered in addressing waiver). Accordingly, we hold that the trial court did not abuse its discretion in failing to find that the defendants had waived their statute-of-limitations defense.

¶71. Venue is so significant an issue that the Mississippi Supreme Court has not hesitated to reverse a jury verdict on damages in a case that was clearly tried in the wrong county. *Capital City Ins. Co. v. G.B. "Boots" Smith Corp.*, 899 So. 2d 505, 517 (¶38) (Miss. 2004). In that case, a Mississippi contractor (located in Jones County) sued a Mississippi subcontractor (located in Newton County) and its non-resident insurer in Jones County, Mississippi. *Id.* Applying Mississippi Code Annotated section 11-11-3, which the court found to be mandatory, *id.* at 516 (¶35), the supreme court held that "venue is proper in

31

Newton County where the resident defendant lives, or Scott County where the cause of action occurred. Thus, the circuit court abused its discretion in denying a change of venue." *Id.* at 517 (¶38). The circuit court had also failed to bifurcate the trial, which the supreme court also found to be error, *id*. at 511 (¶16). The supreme court vacated jury awards of $167,280.63 and $86,747 for the contractor and subcontractor and remanded the case for transfer to either Newton or Scott County.

¶72. In this case, the federal court order remanding the case the first time was filed in the Jasper County Circuit Clerk's office on October 17, 2016. Almost immediately, the Millsapses filed a motion for trial setting on October 21, 2016, and propounded interrogatories and requests for documents to the Allstate defendants on October 25, 2016. On December 8, 2016, the Allstate defendants filed their motion to change venue. In between that time, the Allstate defendants did respond to discovery and propounded some, mainly because the Plaintiff had sought an early trial date. The motion was heard on January 10, 2017. By that time, only two witness depositions had been taken.

¶73. In this case, there was no undue delay by the Allstate defendants in the filing and pursuit of their motion to change venue. The motion was filed fifty-two days after the case was remanded, and heard approximately one month thereafter. No trial date had been set, no scheduling order had been issued, and no deadlines had passed. No substantial amount of discovery had been done. Nor had the Allstate defendants engaged in the judicial process so much that the Millsapses were prejudiced in any way. The Millsapses secured information through discovery as well that they would use in pursuing their case albeit in

32

a different county.

¶74.    A trial judge's ruling on a motion to change venue will normally not be disturbed unless "in the end, there is no credible evidence support the factual basis for the claim of venue." *Flight Line Inc. v. Tanksley*, 608 So. 2d 1149, 1155 (Miss. 1992).  Here there is no credible evidence to support Jasper County as a permissible venue for this case.  Moreover, the Allstate defendants properly raised the issue of venue by filing a motion for change of venue and did not waive their opposition to venue with their limited participate in litigation early in the case.  Their motion was promptly filed and pursued and the Millsapses would have suffered no prejudice had the case been transferred to the correct venue.  As the Mississippi Supreme Court has said: "If in the end venue is improper, the court must honor timely objection and transfer to the correct venue, and, if it does not do so, we must reverse." *Jones v. Rebel Rags LLC*, 270 So. 3d 903 (¶1) (Miss. 2018).  Accordingly, we find that the circuit court abused its discretion in failing to grant Allstate's motion for change of venue and we reverse and remand for transfer to the Circuit Court of Jones County.

## II.    Whether other issues should be addressed.

¶75.    Chief Judge Barnes's separate opinion agrees that venue in Jasper County was improper, but it would have us go farther and render opinions on other substantive issues raised on appeal.  We decline to do so because this is a civil case where the general venue statute applies under which a party has the right to have its case tried in the proper venue. *Chen v. Shope*, 283 So. 3d 97, 101 (¶12) (Miss. 2019).  Moreover, at the trial level, that party specifically moved for a transfer of the case from what we find was an improper venue.

33

¶76.    To support its position that this court may decide some issues and remand others for a transferee court to determine, Chief Judge Barnes's separate opinion raises two quasi-criminal cases that are inapplicable to the case at hand. In both *Fluker v. State*, 200 So. 3d 1148 (Miss. Ct. App. 2016), and *Ducksworth v. State*, 174 So. 3d 323 (Miss. Ct. App. 2015), prisoners filed petitions for writ of habeas corpus. *Fluker*, 200 So. 3d at 1148 (¶1); *Ducksworth*, 174 So. 3d at 323 (¶1). The trial courts denied the petitions. *Fluker*, 200 So. 3d at 1151 (¶9); *Ducksworth*, 174 So. 3d at 323 (¶1). On appeal, we considered the merits of appeals after we determined that the cases were "original actions" and not actions brought under the Mississippi Uniform Post-Conviction Relief Act (UPCCRA) (Miss. Code Ann. § 99-39-1 et. seq.)(Rev. 1984). The UPCCRA requires that PCR motions be filed in the court where the case was tried, section 99-39-7, but venue for original actions is established by other statutes, including Mississippi Code Annotated section 11-11-3(1)(a)(i) (Rev. 2004). On appeal, we treated the cases as ordinary or regular civil actions (i.e. a new lawsuit as opposed to a PCR motion), *Fluker*, 200 So. 3d at 1149 (¶3), and *Ducksworth*, 174 So. 3d at 323-24 (¶¶1, 5), and proceeded to examine the issues and decide the cases on their merits. *Fluker*, 200 So. 3d at 1150 (¶5); *Duckwsorth*, 174 So. 2d at 324 (¶7). These cases only indirectly dealt with venue and involved consideration of a specific statutory venue provision found in the UPCCRA. They are inapplicable to the case at hand, which involves the application of the general civil venue statute and in which a party specifically invoked its right to have its case heard in the proper venue.

¶77.    We do not disagree with the *Fluker* quote from *Leake County Cooperative (A.A.L.)*

34

*v. Dependents of Barrett* that Chief Judge Barnes's separate opinion cites, namely "that venue is not jurisdictional, and the fact that a case is filed in an improper venue does not of itself affect the right of the court to hear and determined the case on the merits." *Fluker*, 200 So. 3d at 1149 (¶5) (quoting *Leake Cty. Coop. (A.A.L.) v. Dependents of Barrett*, 226 So. 2d 608, 616 (Miss. 1969)). Indeed if a party fails to raise improper venue or waives it, any court with jurisdiction can hear the case, which is precisely what happened in *Leake County Cooperative (A.A.L.)*. In that workers' compensation case, the claimant's heirs only raised improper venue in a petition for rehearing after the Mississippi Supreme Court had decided the case. *Leake Cty.Coop. (A.A.L.)*, 226 So. 2d at 614. The supreme court noted that the general venue statute made provisions where a court had jurisdiction but lacked venue. *Id*. at 615. Such action, the statute said, "should not be dismissed, but on objection on the part of the defendant shall, by the court be transferred to the venue to which it belongs." *Id.* The supreme court went on to say: "It is generally conceded that where a court has jurisdiction it has the power to decide the case. The right to have a case heard in the court of the proper jurisdiction may be lost unless seasonably asserted." *Id.* at 616. The supreme court has subsequently said that when a party raises the issue, then the court must transfer the case and, "if it does not do so, we must reverse." *Jones*, 270 So. 3d 903 (¶1).

¶78.     More applicable to this case is the Mississippi Supreme Court's decision in *Capital City Insurance Co. v. G.B. "Boots" Smith Inc.*, 889 So. 2d 505 (Miss. 2004). In that contract/insurance dispute, after refusing to transfer venue, the trial court granted directed verdicts on liability and a jury decided the damages. *Id*. at 506 (¶3). On appeal the supreme

court declined to consider the nine substantive issues raised on appeal and only ruled on two procedural issues, venue and bifurcation. *Id*. at 507 (¶7). The court made no rulings on issues such a the sufficiency of the proof of liability or the ability of experts to testify—matters ruled upon by the trial court and raised on appeal. The *Capital City Insurance* precedent appears to instruct that only procedural issues, not substantive issues, should be decided if the ultimate appellate decision is to vacate the verdict and remand for transfer to another county. *See also Park on Lakeland Drive v. Spence*, 941 So. 2d 203, 208 (¶15) (Miss. 2006), where the Supreme Court disposed of the case on the venue issue and refrained from ruling on the other substantive issue raised in the appeal, namely whether a defendant should be dismissed because he was not served within the required 120 days.

¶79.    In this case, because venue was challenged at the trial-court level and raised on appeal, we should not rule upon any issues adjudicated in violation of the defendant's right to be heard in the proper county. To do so undermines the intent and mandatory wording of the venue statute, "civil actions of which the circuit court has original jurisdiction *shall* be commenced" . . . in the appropriate venue. The concept of judicial economy is not applicable since the case will be remanded either way. Furthermore, this court's deciding claims piecemeal when there is agreement that venue is improper allows a party to "have his cake and eat it too"—namely to forego an interlocutory appeal on a meritorious issue,[24] with the hope that he will win on some meritorious issues and then be able to retry his case on

---

[24] We note that most cases since *Capital City Insurance* have been decided on interlocutory appeal which avoids the problem of appellate courts deciding substantive issues when finding venue to be improper.

36

those he loses. This is a dangerous precedent to set and is best avoided by remanding this case for transfer and refraining from deciding substantive claims.

## Conclusion

¶80. Even though other substantive issues were raised in this appeal, there is no need for this court to decide them because the case will be transferred and any opinion on the remaining issues would be prohibitively advisory.[25] Because the circuit court erred in denying the motion for change of venue, we hereby reverse and remand with instructions that it be transferred to Jones County Circuit Court.

¶81. **REVERSED AND REMANDED**.

**GREENLEE, WESTBROOKS AND McCARTY, JJ., CONCUR. TINDELL, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. BARNES, C.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY CARLTON AND J. WILSON, P.JJ., AND C. WILSON, J. LAWRENCE, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED IN PART BY McCARTY, J.**

---

[25] "It is not within the province of this Court to render advisory opinions." *Hughes v. Hosemann*, 68 So. 3d 1260, 1263 (¶7) (Miss. 2011); *see also Hinton v. Pekin Ins. Co.*, 268 So. 3d 543, 555 (¶43) (Miss. 2019). In *Loden v. State*, 222 So. 3d 312 (Miss. 2017), the Mississippi Supreme Court dismissed the appeal of Loden's motion for post-conviction relief concerning the State's use of midazolam as part of its lethal-injection protocol because it found the issue moot. It further said:

> The purpose of judicial opinions and orders is to vet opposing views, determine which viewpoint best comports with the rule of law, and rule accordingly. We decline to advise Loden and/or his very experienced counsel on a way to proceed with any future claims for "[i]t is not within the province of this Court to render advisory opinions." *Hughes v. Hosemann*, 68 So.3d 1260, 1263 (Miss. 2011). See also *Tallahatchie Gen. Hosp. v. Howe*, 49 So.3d 86, 93 (Miss. 2010) ("[T]his Court does not issue advisory opinions.").

*Loden*, 222 So. 3d at 312, n.1.

**BARNES, C.J., CONCURRING IN PART AND DISSENTING IN PART:**

¶82.   Although I agree with the lead opinion that venue was improper and that the case must be reversed, I write separately to address another dispositive issue that should be rendered, rather than remanded.  Specifically, because Allstate Insurance Company (Allstate) was not a party to the contract (policy), I would reverse and render the judgment on the breach-of-contract claim.  Furthermore, I find that the Millsapses have waived any right to recover the judgment against Allstate Vehicle and Property Insurance Company (AVPIC) on that claim because they did not seek to alter the jury verdict below.  I would, however, reverse and remand the claim for bad-faith adjustment of the claim against Allstate to the Jones County Circuit Court, with Allstate being permitted to raise its defense of misrepresentation.

¶83.   I disagree with the lead opinion's assertion that because this Court is remanding for improper venue, we should decline to address other dispositive issues on appeal.  "[O]ther than in certain special classes of 'local actions,' venue is not jurisdictional, and the fact that a case is filed in an improper venue 'does not of itself affect the right of the court to hear and determine' the case on the merits." *Fluker v. State*, 200 So. 3d 1148, 1149 (¶3) (Miss. Ct. App. 2016) (quoting *Leake Cty. Coop. (A.A.L.) v. Dependents of Barrett*, 226 So. 2d 608, 615 (Miss.1969)).  In *Fluker*, we found that because the petitioner's claim could be resolved on the merits, it was not necessary to address the issue of improper venue.  *Id*.; *see also Ducksworth v. State*, 174 So. 3d 323, 324 n.1 (Miss. Ct. App. 2015) (declining to address question of whether venue was proper because it was apparent the prisoner's claim failed

38

on the merits). Likewise, whether venue is improper does not preclude this Court from addressing the plaintiffs/appellees' claim for breach of contract, which in my view fails on the merits.[26] Improper venue is an error of the Millsapses' own making. They filed in the wrong county, presumably to obtain a more favorable jury, against the wrong party, presumably to reach a "deeper pocket." The lead opinion's decision not to address the merits of the contract and misrepresentation issues fails to promote judicial economy and results in needless litigation as it apparently allows the Millsapses to relitigate *all* of the claims against both Allstate and AVPIC.

## I.     Breach-of-Contract Claim

¶84.    Allstate has consistently asserted that it was not a party to the suit. In its notice of removal to federal court on June 10, 2016, Allstate averred that it was "incorrectly sued as Allstate Insurance Company" and that "the proper party is Allstate Vehicle and Property Insurance." The policy unequivocally states that AVPIC is the insurer. On December 27, 2016, the Millsapses filed a "Motion to Amend Complaint to Correct Misnomer," asking to substitute "Allstate Vehicle and Property Insurance Company" as the "true name" of the defendant in the complaint. In the January 10, 2017 and January 23, 2017 pretrial motion hearings, Allstate's attorney specifically informed the court that he represented *both* Allstate and AVPIC, the "two defendants in this case," differentiating between the two entities.

---

[26] The lead opinion acknowledges that the case cited to support its decision not to address these other issues, *Capital City Ins. Co. v. G.B. "Boots" Smith Corp.*, 889 So. 2d 505 (Miss. 2004), only "appears to instruct that only procedural issues, not substantive issues, should be decided[.]" The supreme court simply found the issues of venue and bifurcation dispositive; there was no discussion at all of why the court declined to address the other issues. *Id.* at 507 (¶7).

39

Although the circuit court granted the Millsapses' motion to amend the complaint at the February 27, 2017 hearing, the court denied Allstate's motion to dismiss Allstate as a party, essentially ruling that the companies were the same defendant. The Millsapses thereafter proceeded to advance the case in this manner. As the lead opinion notes, the Millsapses were awarded damages for breach of contract against Allstate, not AVPIC, and they made no objection to the form of the verdict or the judgment.

¶85. "[A]n action for bad-faith breach of contract is created by contract and requires proof of a breach of contract." *Schoonover v. W. Am. Ins. Co.*, 665 F. Supp. 511, 516 (S.D. Miss. 1987). However, a contract action cannot be maintained "against someone who is not a party to the action or in privity with it." *Maness v. K & A Enters. of Miss. LLC*, 250 So. 3d 402, 418-19 (¶64) (Miss. 2018) (citing *Burns v. Washington Savings*, 251 Miss. 789, 171 So. 2d 322, 324 (1965) ("It is a general rule of the law of contracts that in order to maintain an action to enforce the breach of a contract, or to recover damages growing out of the breach, or for failure to carry out the terms of the contract, it is ordinarily a necessary prerequisite that the relationship of privity of contract exist between the party damaged and the party sought to be held liable for the breach of the contract.")). The Millsapses maintain that Allstate is the insurer, but the record belies this assertion. The policy unambiguously states that the issuer of the policy is AVPIC. Counsel for the Millsapses even acknowledged at the February 27, 2017 hearing that "it is [AVPIC] that issued the policy[.]"

¶86. Generally, our caselaw "favors maintaining corporate entities and avoiding attempts to pierce the corporate veil." *Canadian Nat'l Ry. Co. v. Waltman*, 94 So. 3d 1111, 1115 (¶8)

(Miss. 2012) (quoting *Buchanan v. Ameristar Casino Vicksburg Inc.*, 957 So. 2d 969, 977 (¶27) (Miss. 2007)). Thus, "[p]iercing the corporate veil of a subsidiary to reach the parent corporation is not 'lightly undertaken' by Mississippi courts." *Buchanan*, 957 So. 2d at 978 (¶29) (quoting *Johnson & Higgins of Miss. Inc. v. Comm'r of Ins.*, 321 So. 2d 281, 285 (Miss. 1975)). In *Buchanan*, the Mississippi Supreme Court applied a three-factor test for piercing the corporate veil to reject an "alter-ego" theory for reaching a corporate parent with respect to a "bad faith" claim. *Id*. at 976-77 (¶¶23-26). These factors are the following:

> (a) some frustration of contractual expectations regarding the party to whom he looked for performance; (b) the flagrant disregard of corporate formalities by the defendant corporation and its principals; (c) a demonstration of fraud or other equivalent misfeasance on the part of the corporate shareholder.

*Id*. at 977 (¶26) (quoting *Gray v. Edgewater Landing Inc.*, 541 So. 2d 1044, 1047 (Miss. 1989)). The *Buchanan* court further stressed that "to present a jury issue on a demand that the corporate veil be pierced, a party must present some credible evidence of each of these points." *Id*.

¶87. Allstate asserts that the Millsapses never "attempted to state a claim under the test, much less to support each of the points with evidence." I agree. There was no evidence of "frustration of contractual expectations" regarding the party looked to for performance. *Id*. As noted, the Millsapses admitted that their policy was with AVPIC; this fact was evidenced by the policy's terms as well. As Allstate points out in its brief, "[t]he policy repeatedly and specifically identifies [AVPIC] as the contracting company and issuer of the policy." AVPIC also voluntarily appeared to defend the case. Furthermore, I find that the record contains no evidence of a "flagrant disregard of corporate formalities" by Allstate or its

entities. *Id.* From the outset of the suit, Allstate consistently maintained that it was not the proper party, and its counsel specifically asserted that he represented both Allstate and AVPIC as separate entities. These facts also demonstrate that there was no fraud or misfeasance on the part of Allstate that would warrant a piercing of the corporate veil. Therefore, finding that Allstate was not a party to the contract, I would reverse and render the judgment for the breach-of-contract claim against Allstate.

¶88. Moreover, although the Millsapses filed a notice of cross-appeal and asserted that this Court should alternatively render a verdict against AVPIC, I find this issue is waived, as it was never raised before the circuit court. As this Court has held:

> It is well-settled law that Mississippi appellate courts will not review matters on appeal that were not raised at the trial court level. *McKee v. Bowers Window & Door Co.*, 64 So. 3d 926, 940 (¶42) (Miss. 2011). Specifically, where a party makes no objection to the form of a verdict returned by the jury, that party is procedurally barred from raising errors related to such on appeal. *Thorson v. State*, 895 So. 2d 85, 100 (¶26) (Miss. 2004).

*Bartley-Rice v. State Farm Mut. Auto. Ins. Co.*, 172 So. 3d 1227, 1229 (¶15) (Miss. Ct. App. 2014). Here, the circuit court amended the Millsapses' verdict form (Jury Instruction P-12), giving the jury three options: to assess damages against (1) Allstate only, (2) against AVPIC only, or (3) against both. The Millsapses did not object to the revision. After the jury returned its verdict against Allstate only, the Millsapses accepted the verdict without objection and sought no further relief against AVPIC in the circuit court.[27] *See Jordan v.*

---

[27] It is also apparent that the Millsapses elected to pursue their claim against Allstate, rather than AVPIC, due to Allstate's larger net worth. During closing arguments at the trial on punitive damages, plaintiffs' counsel noted that Allstate had "a net worth of over [fifteen]-and-a-half billion -- with a "B" -- dollars" and asked the jury to award the Millsapses ten times their dwelling claim ($7,315,670) to "send Allstate the message."

*State*, 786 So. 2d 987, 1003 (¶¶32-33) (Miss. 2001) (finding that a defendant's claim that the verdict was not responsive to jury instructions was procedurally barred because the defendant failed to contemporaneously object when the verdict was returned). Accordingly, I find no merit to the Millsapses' claim on cross-appeal that, in the alternative, judgment should be assessed against AVPIC.

## II.     Bad Faith Adjustment of Claim

¶89.    The Millsapses asserted in the complaint that Allstate "acted in bad faith by failing to timely investigate and adjust [their] claim" following the loss. I find that this claim may be brought against Allstate, as there was sufficient evidence presented at trial that the insurance adjusters were employed by Allstate. Gregory Cobb, an underwriting representative for Allstate, testified that all adjusting and underwriting was done by Allstate. Troy DePriest, a claims manager, averred that he had been an insurance adjuster for Allstate since 1998 and that he and his coworkers also adjusted claims for AVPIC. Kerri Steger, a contents adjuster employed by Allstate, also testified that Allstate wrote the policy manuals for the adjusters to follow.

¶90.    In *Bass v. California Life Insurance Co.*, 581 So. 2d 1087, 1090 (Miss. 1991), the supreme court held that an insurance adjuster could be held independently liable to a policy's insured if, in the performance of his or her "duty to investigate all relevant information and . . . make a realistic evaluation of [the] claim," the adjuster's "conduct constitute[d] gross negligence, malice, or reckless disregard for the rights of the insured." (Quoting *Dunn v. State Farm Fire & Cas. Co.*, 711 F. Supp. 1359, 1361 (N.D. Miss.

43

1987)).[28]  Accordingly, I find that this issue should be reversed and remanded for further findings by the Jones County Circuit Court as to whether Allstate's actions in adjusting the Millsapses' claim amounted to "gross negligence, malice, or reckless disregard" of their rights as insureds.

¶91.  Further, I would find that with regard to the adjustment of the claim, the mere acceptance of premiums did not waive Allstate's right to raise the defense of misrepresentation on remand.  The policy terms provided, "We do not cover any loss or occurrence in which any insured person has concealed or misrepresented any material fact or circumstance."  On April 8, 2016, AVPIC denied the Millsapses' claim for the following reasons:

> Our investigation into your claim indicates that you concealed and/or misrepresented material facts and circumstances.  Based upon our investigation of your claim, we concluded that you made misrepresentations

---

[28] In *Gallagher Bassett Services Inc. v. Jeffcoat*, 887 So. 2d 777, 784 (¶26-27) (Miss. 2004), the supreme court reaffirmed "the *Bass* standard" over the federal courts' "'uncertainty' regarding [the] creation of separate standard of care for agents such an insurance adjusters," (citing *Skinner v. USAble Life*, 200 F. Supp. 2d 636, 642 n.5 (S.D. Miss. 2001)) (other citations omitted), and concern that *Bass* had "muddied the waters a bit in this context," (quoting Order, *Russell v. New York Life Ins. Co.*, No. 3:97CV006-D-A, 1997 WL 170317, at *4 (N.D. Miss. March 4, 1997)).

*Bass* did "muddy the waters" in some respect by quoting *Dunn*'s statement that the "[t]he relationship between an adjuster and the insured is a purely contractual one." *Bass*, 581 So. 2d at 1090 (quoting *Dunn*, 711 F. Supp. at 1361).  *Dunn*, however, cited no precedent to that effect.  *Dunn*, 711 F. Supp. at 1361.  Instead, *Dunn* cited *Griffin v. Ware*, 457 So. 2d 936, 940 (Miss. 1984), which held that the contract exists between the third-party adjuster and insurer, not the adjuster and the insured.  *Dunn* further cited *Leathers v. Aetna Casualty & Surety Company*, 500 So. 2d 451 (Miss. 1986), in which the supreme court recognized that although an independent adjuster has no "contractual or quasi-contractual" duty to the insured, the "general rule in tort is that the agent or servant, the one whose conduct has rendered his principal liable, has individual liability to the plaintiff." *Leathers*, 500 So. 2d at 453.  *Gallagher* did not quote this portion of *Bass*/*Dunn*.

44

regarding your financial condition and regarding material aspects of your claim. Additionally, there have been discrepancies in the information you have provided to us regarding your claim. Also, we have concluded that you intentionally overstated the value of the property damaged by the fire and overstated your claim for additional living expenses.

The circuit court, treating AVPIC and Allstate as one entity, determined that "Allstate" had waived any defense of misrepresentations by not cancelling the policy and not refusing premiums after the fire.

¶92.    As discussed, AVPIC and Allstate are separate and distinct entities with respect to the claims brought by the Millsapses. Here, it is AVPIC, not Allstate, which accepted the premiums from the Millsapses.[29] And just as there are two distinct entities, there are two distinct types of misrepresentation with regard to the policy at issue—misrepresentation in the policy application and misrepresentation in the claims process. Asserting the right to raise the defense of misrepresentation at trial, counsel for AVPIC and Allstate provided an excellent summation of this distinction:

> Well, we're talking about two different things, a policy void is based on a misrepresentation on the application. A misrepresentation during the investigation of the claim allows the claim to be denied[,] not to void the policy.
>
> . . . .
>
> Waiver can apply when the insurance company wants to cancel a policy. Waiver doesn't apply when we're talking about coverage. And that's what we're talking about here. That's the distinction.

---

[29] The record contains a "Confirmation Notice for the ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY Easy Pay Plan," indicating that the Millsapses' premiums were paid by a bank draft and collected by AVPIC per the document's terms of agreement.

While I have found no Mississippi case on point addressing this particular issue, I find instructive two Georgia cases, expressly noting the "vital" distinction between "misrepresentations in the application for insurance [and] misrepresentations in the insurance[-]claims process" as it relates to waiver of the insurer's right to raise this defense. *Scott v. Allstate Prop. & Cas. Ins. Co.*, No. 408CV236, 2010 WL 1254295, at *5 (S.D. Ga. Mar. 30, 2010). In *Scott*, the United States District Court for the Southern District of Georgia addressed the same Allstate policy provision as noted above regarding concealment and misrepresentations with regard to a "loss or occurrence." *Id*. at *3. The plaintiff argued that Allstate had waived its affirmative defenses of misrepresentation because it had renewed her policy months after the loss occurred. *Id*. at *5. The *Scott* court concluded:

> Allstate's defense is that Scott (and Baker) made material misrepresentations in the claim for loss. Those misrepresentations precluded coverage for losses arising from the April 2007 fire only. Coverage was otherwise still provided by Allstate, and, while the situation never arose, Allstate was obligated to pay for losses in any unrelated claim. Allstate's renewal of the Policy . . . is thus a legal nullity that in no way waives the affirmative defenses asserted by Allstate now.

*Id*; *see also Potter v. Allstate Ins. Co.*, No. 1:05-CV-320-CAP, 2006 WL 8431873, at *4 (N.D. Ga. June 21, 2006) ("Although Allstate's actions [in renewing the policy] waived its right to rescind the [p]olicy and assert defenses based on the material misrepresentations in the application, . . . Allstate did not waive its right to assert a defense to coverage based on [insured's] alleged misrepresentations during the claims process.").

¶93. As Allstate contends, "This case does *not* involve policy forfeiture. This is not a case of an otherwise covered claim being avoided by declaring a policy void *ab initio*. This is

46

a lack-of-coverage case."  In *Ford Life Insurance Co. v. Shannon*, 328 So. 2d 342, 344 (Miss. 1976), the supreme court addressed the issue of whether an insurer had waived its defenses by failing to cancel the insured's life and disability policy and refund the premium when it denied his claim.  Similar to the reasoning in *Scott*, the *Ford* court found there was no waiver, holding:

> There is no reason for the [i]nsurer to cancel the policy and refund premiums because a particular claim is not covered when other insurance coverage remains unaffected.  We hold there was no waiver in this case . . . . There is nothing inconsistent in continuing to accept premiums while denying liability for a loss not covered by the policy.

*Id*.

¶94.   Thus, while  AVPIC's acceptance of premiums may have waived its right to raise the defense of misrepresentation with regard to the application process (e.g., the existence of prior insurance), neither AVPIC nor Allstate waived the right to raise a defense of misrepresentation in the claim process (e.g., veracity of the contents).  Accordingly, on remand of the Millsapses' claim against Allstate for improper adjusting, Allstate may raise a defense as to misrepresentation during both the application and claims processes.

**CARLTON  AND  J.  WILSON,  P.JJ.,  AND  C.  WILSON,  J.,  JOIN  THIS OPINION.**

**LAWRENCE, J., DISSENTING:**

¶95.   Because I would find that Jasper County was a proper venue and that the circuit court was in error when the parties were not allowed to voir dire the venire on the issue of punitive damages, I respectfully dissent.

1.     **Venue**

47

¶96.    The Mississippi Legislature made the venue statute simple:

> Civil actions of which the circuit court has original jurisdiction shall be commenced in the county where the defendant resides, or, if a corporation, in the county of its principal place of business, **or in the county where a substantial alleged act or omission occurred or where a substantial event that caused the injury occurred**.

Miss. Code Ann. § 11-11-3(1)(a)(i) (Rev. 2004) (emphasis added).

¶97.    In essence, the Legislature said that if a "substantial" part of a tort occurred in a county, then all of the tort could be tried in that county. Granted, defendants have a right to the proper venue in the trial of a cause, but so do plaintiffs.[30]  "Of right, the plaintiff selects among the permissible venues, and his choice must be sustained unless in the end there is no credible evidence **supporting the factual basis for the claim of venue**." *Greenwood v. Mesa Underwriters Specialty Ins. Co.*, 179 So. 3d 1082, 1085 (¶9) (Miss. 2015) (internal quotation marks omitted) (other citation omitted) (emphasis added) (quoting *Hedgepeth v. Johnson*, 975 So. 2d 235, 238 (¶10) (Miss. 2008)).

¶98.    As the Millsapses recognized in their response to Allstate's motion for a change of venue, the Mississippi Supreme Court has repeatedly held that "the statutory language allows for venue either in 'the county where a **substantial alleged act or omission** occurred' or in the county 'where a **substantial event** that caused the injury occurred.'" *Greenwood*, 179 So. 3d at 1087 (¶15) (quoting Miss. Code Ann. § 11-11-3(1)(a)(i)); *see also Holmes v.*

---

[30] Rule 82(d) of the Mississippi Rules of Civil Procedure emphasizes a plaintiff's right to choose the proper venue. If a court grants a party's motion alleging improper venue under Rule 82(d), "[t]he plaintiff shall have the right to select the court to which the action shall be transferred in the event the action might properly have been filed in more than one court." M.R.C.P. 82(d).

*McMillan*, 21 So. 3d 614, 619 (¶11) (Miss. 2009); *Hedgepeth*, 975 So. 2d at 238 (¶7); *Med. Assurance Co. of Miss. v. Myers*, 956 So. 2d 213, 218-19 (¶¶14-15) (Miss. 2007). Here, the Millsapses claimed that the part of the "substantial alleged act" or the "substantial event that caused the injury" was Allstate's refusal to pay the Millsapses' monthly living expenses after recognizing, under the policy, that those expenses should have been paid. The record shows that Allstate was paying those expenses in Jasper County for part of the time the claim was being investigated. In fact, Allstate agreed to pay the living expenses of this insured for a Jasper County residence that Allstate knew of and actually negotiated for on behalf of the insureds. The denial of that unambiguous provision in the policy was part of the bad-faith lawsuit initiated by the Millsapses. In their complaint, the Millsapses alleged:

> Shortly after the fire, the Millsaps filed claims with Allstate for dwelling loss, personal property loss, **assisted living expenses**, and automobile loss. At Allstate's request, the Millsaps temporarily moved into a low-quality hotel. The hotel was infested with bedbugs which caused injury to the Millsaps. The Millsaps were forced to move to a different hotel and then to a rental home. **Despite promises to the contrary, and in violation of the Home Policy, Allstate has failed to pay rent on the Millsaps' rental home and have to pay other additional living expenses.**
>
> . . . .
>
> On November 20, 2015, when the Millsaps were residing **in Jasper County**, Mississippi, **Allstate stopped paying additional living expenses** and demanded that the Millsaps execute an "advance payment agreement" to continue receiving ALE payments. This demand was in violation of the Policy terms, made in bad faith, used as a harassment mechanism, and constituted a denial of the Millsaps' claims. **This breach of contract occurred in Jasper County, Mississippi.** As proof of its bad faith motives and intentions, even after the Millsaps objected to the heavy-handed advance payment agreement and requested support for the agreement in the Policy, Allstate refused to timely respond to the Millsaps' objection and **refused to continue paying ALE claims. This breach of contract occurred in Jasper County,**

**Mississippi**.

(Emphasis added).

¶99.    As evidenced in the complaint, part of the Millsapses' allegations of  bad faith handling of the claim occurred in Jasper County when Allstate stopped paying living expenses due and owed under the policy in question.  The insureds were living in Jaspser County.  Allstate knew the insureds were living in Jasper County.  Allstate agreed to pay the rental expenses for the insureds to live in Jasper County.  Allstate actually paid some of those living expenses incurred in Jasper County before the company suddenly refused and stopped paying any more such expenses.  Under the venue statute, I would find that because a substantial part of the tort, including the injury, occurred in Jasper County, the whole tort cause and related actions could be tried in that county.

¶100.  Further, I would find that if venue was arguably improper, then Allstate did in fact waive that affirmative defense when it failed to raise it in its answer.  It is without doubt that Allstate did not assert the affirmative defense of improper venue in their answer.  The only answer Allstate filed was one in federal court after Allstate removed the case from Jasper County.[31]  In the answer filed in federal court, Allstate did deny the allegation in the complaint that the Jasper County Circuit Court had jurisdiction and venue to hear the cause.  However, Allstate did not assert the affirmative defense of "improper venue" as referenced in Mississippi Rule of Civil Procedure 12(b)(3).  That Rule is clear as to the legal

_____

[31] The federal court remanded the case back to Jasper County where the case was restored to the active docket on October 17, 2016.

implications of not including the affirmative defense in the answer. It is waived.[32]

¶101. Further, because Allstate conducted litigation activity on the merits of the claim in Jasper County before filing its motion for change of venue, I would find that as further evidence it waived the improper-venue defense. In fact, that is exactly what the circuit court found. This case was remanded back to Jasper County and restored to the active docket on October 16, 2016. Allstate did not file an amended answer. Allstate did not file a motion for a change of venue until December 8, 2016. Between October 16, 2016, and December 8, 2016, Allstate did absolutely nothing to assert the affirmative defense of improper venue. Instead, Allstate engaged in written discovery on the merits of the litigation. Allstate also noticed and took two depositions of fact-witnesses during this time. As stated previously, Allstate filed its motion to change venue on December 8, 2016. The plaintiffs filed a written response to the motion and essentially argued in the circuit court what they argue to this Court. The court held a hearing on that motion on January 10, 2017, and listened to arguments of counsel and denied from the bench Allstate's motion for change of venue.[33] I would find that Allstate submitted to the jurisdiction of the court and accepted venue in Jasper County by conducting discovery on the merits of the claim.

¶102. In summary, I would find that Allstate waived the issue of improper venue by failing to assert it as an affirmative defense pursuant to Rule 12 either in the answer actually filed

---

[32] *See* M.R.C.P. 12(h)(1).

[33] Although not outcome determinative, it is interesting that Allstate did not seek an interlocutory appeal regarding the denial of the change of venue when the law is clear such an appeal is available. *See, e.g.*, *Chen v. Shope*, 283 So. 3d 97, 98 (¶6) (Miss. 2019); and *Austin v. Wells*, 919 So. 2d 961, 961 (¶1) (Miss. 2006).

or in never attempting to amend its answer when the case was remanded to Jasper County. Further, Allstate waived the defense of improper venue by agreeing to and conducting litigation on the merits of the claim in Jasper County after remand and prior to filing a motion for change of venue.

### 2.    Voir Dire

¶103.  I agree with the lead opinion that the Mississippi Supreme Court has clearly opined that on change of venue reversals, the appellate courts should not render, in effect, what would be advisory opinions on the remaining issues. *See Ante* at n.25 (citing *Hughes v. Hosemann*, 68 So. 3d 1260, 1263 (¶7) (Miss. 2011); *Hinton v. Pekin Ins. Co.*, 268 So. 3d 543, 555 (¶43) (Miss. 2019)).  Rather, by refusing to address the other issues, the parties essentially get to start over and litigate the issues to another jury in the correct county.  While I agree the remaining issues should not be foreclosed by this Court on remand, I do think one issue is of such importance and of legal significance that our failure to address it could continue to work a serious legal wrong—the court's decision to prohibit questions concerning punitive damages during voir dire.  During the trial of this case, the following exchange occurred during voir dire:

| Mr. Ulmer: | You saw the figure that Mr. McHard put up on the board about basically the out-of-pocket expenses of Mr. and Mrs. Millsaps. There's a possibility this matter may come before you based on what's called "punitive damages." |
|---|---|
| Mr. Stephenson: | Objection. Your Honor, we agreed not to mention this until after the first phase of the trial. |
| The Court: | Yeah, you can't get into except breach of contract. Sustained. |

52

¶104. How could the parties know any fixed biases or prejudices potential jurors may have as to punitive damages if the parties could not ask questions to the potential jurors? Punitive damages are often debated in public discourse and have caused some people to develop fixed and emotional opinions about those types of damages. Litigants in this State have a right to a fair and impartial jury. Voir dire is the only process during the trial when the parties can question the jurors and explore that impartiality. A trial court's fixed and unreasonable limitation placed on such an important phase of a trial should be considered error by this Court.

¶105. I understand that the issue of punitive damages would only arise after the jury first determined the liability issue. Further, I understand that if the jury returned a verdict for Allstate, then the issue of punitive damages would never be addressed. We cannot predict the future any more than we can explain some people's actions in the past, but our system of justice is bifurcated for a reason. When bifurcation occurs as to the legal issues in some trials, the parties have only one opportunity to question the jurors. That is during voir dire at the beginning of the trial. The circuit court's limitation of voir dire in this case is akin to a capital murder trial where the State would not be allowed to question potential jurors about their opinions on the death penalty in voir dire. While it is not known if the jury will be allowed to deliberate on a death sentence at the beginning of a trial, it might. In every capital-murder-trial voir dire, the parties are allowed to question the potential jurors on their views about the death penalty even though no one knows at that time if the trial will enter a second phase. Those voir dire sentencing questions are asked long before the jury ever

returns a capital-murder guilty verdict.

¶106. Likewise, here, it was not known at the beginning of the trial if the jury would be allowed to actually deliberate on punitive damages. But it might, depending on the outcome of the first phase of the trial and the court's ruling.[34] And, in fact, it did. Yet, the plaintiffs never got to voir dire the jury on the issue of punitive damages. Preventing the plaintiffs from questioning the potential jurors regarding their views on punitive damages was requiring the plaintiffs to travel blindly in their quest for a fair and impartial jury. I would hold that voir dire is a fundamental and essential part of a fair trial, and it would be error for a court to curtail or limit the questioning of potential jurors on such a substantive and important issue as in this case. While I recognize and agree that courts are entitled to enforce reasonable restrictions on parties during litigation, preventing a party from conducting voir dire like that attempted here certainly seems unreasonable. The parties, in an adversarial role

[34] Mississippi Code Annotated section 11-1-65 (Rev. 2004) states, in relevant part:

(1) In any action in which punitive damages are sought:

. . . .

(b) In any action in which the claimant seeks an award of punitive damages, the trier of fact shall first determine whether compensatory damages are to be awarded and in what amount, before addressing any issues related to punitive damages.

. . . .

(d) The court shall determine whether the issue of punitive damages may be submitted to the trier of fact; and, if so, the trier of fact shall determine whether to award punitive damages and in what amount.

54

to each other and the trial court, as a neutral arbiter of that adversarial trial process, function together to ensure a fair and impartial jury. Trial courts should be cautious in limiting voir dire, by either unreasonable time limitations or the restriction of substantive issues relative to the case before it. While it is but one case for the judge and lawyers involved, it is everything for the parties involved. Allowing the attorneys the ability to question the potential jurors on the issues of the case protects the all-important and longstanding legal principal that has served this country well: the right of the citizens to have their legal issues resolved by a fair and impartial jury. This issue was preserved by the plaintiffs and presented to this Court in the cross-appeal. Because this case is being remanded for a new trial, I think this Court should have addressed this substantive issue to ensure the parties have an ample opportunity to examine and question jurors as to impartiality on that often emotional and publicly debated issue of punitive damages.

**McCARTY, J., JOINS THIS OPINION IN PART.**